**ELECTRONICALLY FILED ON 6/28/2006**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-515 T
(JUDGE ALLEGRA)

COMCATION, INC.,
Plaintiff

v.

THE UNITED STATES,

Defendant

PRETRIAL BRIEF
(MEMORANDUM OF CONTENTIONS OF FACT AND LAW)

The Plaintiff, Comcation, Inc., (hereinafter "Plaintiff"), through their Attorney Anthony C. Gulotta, in response to the Court's Order Requesting a Pretrial Brief dated April 24, 2006, submits this Pretrial Brief in the present matter.

# TABLE OF CONTENTS


PAGE

TABLE OF AUTHORITIES.........................................................................3

STATEMENT OF MATERIAL FACTS...........................................................5

BURDEN OF PROOF..............................................................................7

ISSUE....................................................................................................8

DISCUSSION..........................................................................................8

ANALYSIS.............................................................................................10

CONCLUSION.......................................................................................17


## EXHIBITS


Comcation Network Diagram.......................................................Exhibit 1

IRS Letter Ruling 200133008......................................................Exhibit 2

TABLE OF AUTHORITIES

The Plaintiff avers that the following additional authorities are relevant to the Plaintiff's Pretrial Brief (Memorandum of Contentions of Fact and Law).

**STATUTES**

26 U.S.C. §4251, et seq .......................................................... 8, 10

26 U.S.C. §4252 ..........................................................8, 9, 10, 11, 12, 13, 15, 16, 17

**CASES**

United States v. Max Janis, 428 U.S. 433, 440 (1976) ......................................7

Lewis v. Reynolds, 284 U.S. 281, 283 (1976) ..............................................7

Trans-Lux Corp. v. United States, 696 F.2d 963, 966
(Fed. Cir. 1982) ..........................................................................7

Comdata Network, Inc. v. U.S., 21 Cl. Ct. 128 (1990) ............................14, 15, 16

Fortis, Inc. v. United States, 2004 WL 2085528 (S.D.N.Y. 2004) ..........................13

National Railroad Passenger Corp. v. United States, 338 F.Supp. 2d 22
(D.C. 2004) ........................................................................10, 12

Office Max, Inc. v. United States, 309 F.Supp. 2d 984
(N.D.OH 2004) ......................................................................9, 10

**MISCELLANEOUS**

S. Rep. No. 89-324 (1965); 26 U.S.C. 4252 ..............................................12

Rev. Rul. 79-245 (1979) ..............................................................14, 16

Rev. Rul. 79-405 (1979) ..............................................................14, 15, 16

Black's Law Dictionary Sixth Edition (1990) ..............................................12

IRS Letter Ruling 200133008.....................................................................16

Merriam-Webster's Collegiate Dictionary Eleventh Edition (2003)....................11, 12

Black's Law Dictionary Eighth Edition (2004)..............................................11

STATEMENT OF MATERIAL FACTS

The Plaintiff would like to set forth the relevant facts that they intend to enter into evidence during the trial in this matter. The Plaintiff does not believe there will be any material facts that the Court must resolve. The question before the Court is a matter of law.

The Plaintiff is an Internet Service Provider. As such, they provide Internet access to the general public. Their service area is in the South Eastern portion of Pennsylvania, including Philadelphia. In order to provide Internet access to their customers, the Taxpayer purchases various circuits and lines and incorporates them into their network. Their network in turn is connected through lines to other larger Internet service providers. In order to provide dial up access to their customers, Comcation purchases direct inward dial circuits and lines. These circuits and lines are located at various points of presence (POPs) and are connected to a bank of modems.

When a customer wants internet access, their computer initiates the call and dials the modem. The modem picks up the call, authenticates the user as being a Comcation customer and then routes the user's Internet traffic to and from the Internet through one of Comcation's network access servers. A diagram which depicts Comcation's network is attached hereto as Exhibit A.

This case only involves the lines that Comcation purchases to connect to their modems that allow their customers to have dial up access. Specifically, the service in question allows them to receive incoming calls. In the case of Internet Service Providers, these lines allow customers to dial into the ISP's router using their modem attached to

their computer over their standard phone line. Comcation has several choices when it comes to lines that they could purchase to receive incoming calls. For business reasons, specifically the lower cost, Comcation purchases direct inward dial lines (DID lines).

A DID line is a one-way trunk service provided by telecommunication providers that allows incoming calls from the public network to reach a specific station line in a Private Branch Exchange (PBS) or network without attendant assistance. DID lines are provisioned by the telephone company to only receive incoming calls. DID lines cannot make outgoing telephone calls. Because DID lines cannot make outgoing calls, they are less expensive than a standard local service. DID service consists of a series of telephone numbers (e.g. groups of 20) in the Central Office that corresponds to the individual extension connected to one of Comcation's POPs. The DID lines themselves generally roll to the first available line in the group, so the customer can use the same number every time they dial into their ISP's internet network. Since DID lines cannot be used for outgoing calls, they do not have dial tone. The DID service allows an ISP to provide a single phone number to their customers in a specific area code and exchange for Dial-up access to the Internet.

In the present case, the DID lines in question were purchased from Bell Atlantic, XO Communications, TCG and AT&T. The Taxpayer has characterized all the services as DID PRI (Primary Rate Interface) lines. The actual invoices note the services as PRI, DS-1, PRI-Enhanced Switched Services and dedicated ISDN. All of the lines are used to provide dial up access to Comcation's customers. The actual characterization of the lines, beyond the fact that they are DID lines, is not a material fact.

The Petitioner does not anticipate any objections to the Government's witness (Dr. Hills), his expert report or the Government's exhibits.

## BURDEN OF PROOF

"In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover." United States v. Max Janis, 428 U.S. 433, 440 (1976) (applying the rule to a request for refund of Federal Wagering Excise Tax) (citing Lewis v. Reynolds, 284 U.S. 281 (1932); See also David Cook v. United States, 46 Fed Cl. 110, 115-116 (Fed. Cl. 2000) (concluding the taxpayer bears the burden of proving that they are entitled to a refund of tax) (citing United States v. Real Estate Sav. Bank, 104 U.S. 728, 732-34 (1881)). "The action to recover on a claim for refund is in the nature of an action for money had and received and it is incumbent upon the claimant to show that the United States has money which belongs to him." Lewis v. Reynolds, 284 U.S. 281, 283 (1976). The Taxpayer has met their burden of proof, if a preponderance of the evidence persuades the court that they are entitled to a refund. See Cook v. U.S., at 116.

Although the Taxpayer bears the burden of producing evidence that persuades the Court that they are entitled to a refund, any question of law concerning an ambiguous section of the taxing code must be resolved in favor of the Taxpayer. Trans-Lux Corp. v. United States, 696 F.2d 963, 968 (Fed. Cir. 1982). Specifically, "If [such an interpretation] leads to a conclusion that there must be doubt as to taxability, then it should be resolved in favor of the taxpayer." Id.

## ISSUE

WHETHER THE PLAINTIFF'S PURCHASE OF DIRECT INWARD DIAL LINES ARE OUTSIDE THE SCOPE OF THE FEDERAL EXCISE TAX IMPOSED BY INTERNAL REVENUE CODE SECTION 4251?

## DISCUSSION

### THE PLAINTIFF'S PURCHASE OF DIRECT INWARD DIAL LINES ARE OUTSIDE THE SCOPE OF THE FEDERAL EXCISE TAX IMPOSED BY INTERNAL REVENUE CODE SECTION 4251.

It is the Taxpayer's position that their purchase of direct inward dial service (DID) are not within the scope of the definition of "local telephone service" contained in 26 U.S.C. §4252(a)(1) and are, therefore, not subject to the three percent Federal Excise Tax included in 26 U.S.C. §4251. The Government believes that these lines do meet the definition and are, therefore, taxable.

26 U.S.C. §4251 imposes a tax "on amounts paid for communications services," including "local telephone service."

In order for dial access to be taxable, it must be within the scope of Section 26 U.S.C. §4251's definition of "local telephone service."

26 U.S.C. §4252(a)(1) defines "local telephone service" as:

> "the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system."

"In all cases of statutory construction, the starting point is the language employed by Congress." Office Max, Inc., at 992 (citing Chapman v. The Higbee Company, 319 F.3d 825, 829 (6th Cir. 2003). "In other words, courts engaged in statutory interpretation must 'look first to the plain language of the statute.'" Office Max, Inc., at 992 (citing The Limited, Inc. v. Commissioner of Internal Revenue, 286 F.3d 324, 332 (6th Cir. 2002). "Where 'the statute's language is plain, the sole function of the court is to enforce it according to its terms.'" Office Max, Inc., at 992 (citing United States v. Mills, 140 F.3d 630, 633 (6th Cir 1999)). To the extent there is an ambiguity in the law concerning whether a transaction falls within the scope of a tax it should be interpreted in favor of the Taxpayer. Office Max, Inc. v. United States, 309 F.Supp. 2d 984 (N.D.OH 2004).

## ANALYSIS

The Plaintiff's purchase of PRI and other line access provisioned by telecommunication providers as direct inward dial only are not within the scope of the Federal Excise Tax contained in 26 U.S.C. §4251. Specifically, these inward dial circuits are not within the scope of the definition of "local telephone service" contained in Section 4252 (a)(1). Section 4252(a)(1) defines "local telephone service" as:

> "the **access** to a local telephone system, and the **privilege** of telephonic quality communication with **substantially all** persons having telephone or radio telephone stations constituting a part of such local telephone system." 26 U.S.C. §4252(a)(1) (emphasis added).

In Office Max, Inc., the Court held that the plain language of the statute required billing to be based both on "time and distance" to bring a call within the definition of "toll telephone service". Office Max, Inc. at 993. The Court reasoned that "**every word** of a statute must be presumed to have been used for a purpose." Id. at 993 (citing Aeroquip Vickers, Inc. v. Commissioner of Internal Revenue, 347 F.3d 173, 183 (6th Cir 2003) (emphasis added). The Court found the section to be unambiguous and, therefore, found that the plain language should be given effect. Id. at 993-994; See also National Railroad Passenger Corporation v. United States, 338 F. Supp. 2d 22, 26 (D.C., D.C. 2004).

1. Comcation's DID line purchases did not give them access or the privilege to communicate with substantially all in the local calling area.

Comcation concedes that the lines in question provide a telephonic quality connection. They also concede that anyone, whether in the local calling area or not, can "call" the number in question and Comcation's modem bank will "answer" the call. In the present case, the words that are at issue are "access," "privilege" and "substantially all." More specifically, are DID lines within the definition of "local telephone service," which requires the service to have "**access** to a local telephone system, and the **privilege** of telephonic quality communication with **substantially all** persons having telephone or radio telephone stations constituting a part of such local telephone system" 26 U.S.C. §4252(a)(1) (emphasis added).

The plain meaning of "access," is "permission, liberty, or ability to enter, approach, or pass to and from a place or to approach or communicate with a person or thing b: freedom or ability to obtain or make use of something...." Merriam-Webster's Collegiate Dictionary Eleventh Edition, pg 7 (2003). Black's Law Dictionary defines "access" as "an opportunity or ability to enter, approach, pass to and from, or communicate with." Black's Law Dictionary Eighth Edition, pg 14 (2004). Looking at the definition, it seems clear that in order to "access" you must have the "ability to enter" the local telephone system, have the liberty to do so when you choose ("permission, liberty or ability to enter...freedom or ability to obtain or make use of something") and have the ability to **both** enter the

local telephone system and have someone contact you from the local telephone system ("pass to and from"). Congress chose to use the word "access" and, like the words "time and distance" in National Railroad Passenger Corp., it should be given its plain meaning. This is even clearer when it is taken in the context of the use of the words "privilege" and "substantially all" in the same sentence.

The word "privilege" is defined as "a **right** or immunity granted as a **peculiar benefit, advantage, or favor.**" Merriam-Webster's at pg 988 (2003). Blacks Law Dictionary goes on to say "a privilege grants someone the legal freedom to do or not to do a given act." Black's at 1234. Furthermore, the word right is defined as "a just and legal claim to hold, **use**, or enjoy it...**as he may please.**" Blacks at Dictionary (6th Edition) (emphasis added). The use of the word **privilege** and its common meaning is consistent with Congress's legislative record concerning the 1965 amendment. Congress made it clear in their Senate report that the tax levied in §4252(a)(1) was for "the **right** of access to a local telephone system and the privilege of telephonic quality communication...." Senate Report No. 89-324 (1965), at 1725 (emphasis added). This language, taken in conjunction with the phrase "with substantially all" and the word "access", makes it clear that Congress intended a service to come within the definition of "local telephone service" only if the consumer buying the service was entitled to (had the right and privilege to) access (make outgoing calls) the local telephone system and call (initiate and receive calls) with substantially all individuals in the local telephone system. DID lines do not entitle, give the right or privilege to the purchaser to make outgoing calls and, therefore, do not meet

any of the three requirements set forth by Congress. Applying the plain meaning of the definition of "local telephone service," the purchases of DID and PRI lines are outside the scope of the Federal Excise Tax under 26 U.S.C. §4252(a)(1).

As the Court in Fortis stated when it rejected the IRS's attempt to unilaterally update the definition of toll telephone service, "this case does not even involve a drafting error; it involves a disconnect between a forty-year old tax scheme and recent innovations in the telecommunications industry. It is plainly Congress's responsibility to decide whether to revise the statute to accommodate such developments." Fortis, Inc. v. U.S., 2004 WL 2085528 (S.D.N.Y. 2004), affirmed No. 05-cv-2518, 2006 U.S. App. 10749 (2d Cir. April 27, 2006) (per curiam).

2. The Government's position is not persuasive and at best leaves doubt as to whether or not the lines in question should be subject to Federal Excise Tax.

The Government contends that since anyone in the local calling area can call Comcation's modems, it is enough to bring it within the scope of "local telephone service." The question is not whether substantially all in the local calling area have access to and the privilege of communication with Comcation. The question is whether Comcation has access to and the privilege of communication with substantially all persons having a telephone in the local telephone system. Because their lines do not allow them to make an outgoing call, even if they wanted to do so, it is clear that they do not have the privilege to

communication with anyone in their local calling area. The Government's argument should be rejected and this Court should hold in favor of the Taxpayer.

In support of their position, the Government will most likely look to Comdata Network, Inc. and Rev. Rul. 79-245. Both stand for the proposition that the capability of a service, not its actual use, should determine its taxability. Comdata Network, Inc. v. U.S., 21 Cl. Ct. 128 (1990); Rev. Rul. 79-245 (1979). The Plaintiff agrees with this conclusion of law. It is also clear that both of these decisions look to the service actually purchased from the telephone company to determine the capabilities of the service. Id. Our facts are distinguishable from those in Comdata and Rev. Rul. 79-245, as the lines purchased were already provisioned for direct inward dial when the Plaintiff purchased them. Comcation's purchases are more analogous to the facts in Rev. Rul. 79-405, where the purchase of service had inherent limitations. Rev. Rul. 79-405 (1979). Comcation did not place the restrictions on the lines internally and they, therefore, did not purchase service that meets the definition of "local telephone service."

In Comdata, the company purchased local access lines, which they decided to use only for incoming calls. Comdata at 130. There were no restrictions placed on these lines by the telephone company. See Id. Comdata made a decision not to use the lines for outgoing calls, and instead had separate WATTS lines for outgoing calls. Id. The facts in Rev. Rul. 79-245 were similar. In that case a company purchased local telephone lines and then used them exclusively for non-voice transmissions. Id. The telephone company placed no restrictions on the lines. Id. The IRS reasoned "by plugging in a regular telephone set, **if it so chooses**, it may exercise the privilege of telephonic (voice) quality communication with substantially all persons having telephones in the local

system…." Id. (emphasis added). This case is different. In the present matter, the telephone companies sold lines to Comcation that were provisioned for incoming calls only. This service, known as Direct Inward Dialing (DID), only allows an ISP to receive incoming calls. They cannot make an outgoing call on these lines. As such, Comcation could not have plugged a phone in and exercised a privilege to make phone calls to substantially all persons having a telephone in the local system. If they had picked up the phone in this hypothetical, they would not have gotten a dial tone and they could not have dialed a number and communicated with anyone in the local telephone system.

Our case is more similar to that of the taxpayer in Rev. Rul. 79-405. In that matter, the IRS ruled that lines were not local telephone service where the customer did not have access to the local telephone system. Rev. Rul. 79-405. The Court in Comdata noted the significance of this distinction. Comdata at 130-131. The Court, noting the term "privilege" connotes right, stated the tax is applicable when a person has the "right to utilize the telephone lines to communicate with a substantial number of stations…." Id. (discussing the term privilege as it relates to toll telephone service, which is defined in the same section as local telephone service). The Court went on to state that the taxpayer in Rev. Rul. 79-405 purchased a service that "offered no opportunity to access a switchboard through which other numbers on the local telephone service could be reached." Id. The system in Rev. Rul. 79-405, where the service was not within the definition of local telephone service, was "inherently incapable of being used more expansively." Id. "For the purposes of the communications tax, this difference is critical." Id. In both Comdata and Rev. Rul. 79-405, the application of §4252(a)(1) rested upon whether the business purchasing the service could call other parties in the

local calling area if they were to use the full capability of the service. See Comdata at 130-131; Rev. Rul 79-405. Although there were several scenarios in Rev. Rul. 79-405, our case is similar to the facts in Rev. Rul. 79-405 where the service was not within the definition of local telephone service. Specifically, the DID service did not offer an opportunity to access a switch through which other numbers on the local telephone service could be reached. If the Plaintiff picked up a phone attached to the service it purchased, they could not have dialed a number and communicated with anyone in the local telephone system.

If we look to the capabilities of the lines, therefore, we find that the service did not have all the capabilities necessary to meet the federal definition of local telephone service in §4252(a)(1). Specifically, the service's capabilities did not grant Comcation the privilege of initiating calls with substantially all persons having a telephone in the local system. As such, the Plaintiff asserts that the lines at issue do not have the capabilities that were available to the taxpayers in Comdata or Rev. Rul. 79-245, nor do these lines rise to the level necessary to fall within the scope of local telephone service taxable under Section 4252.

Ironically, the IRS even agreed with the Taxpayer's position in 2001. In Letter Ruling 200133008, which was subsequently rescinded, the IRS was faced with an ISP that purchased DID PRI. The IRS found that it was not subject to FET, since the lines could not be used to make outgoing calls. A copy of this Letter Ruling is attached hereto as Exhibit B.

To the extent that the Government's argument is at all persuasive, it only highlights the ambiguity in the definition of "local telephone service." If the

Government's interpretation leaves any doubt as to taxability of the Taxpayer's purchase of DID lines, then that doubt should be resolved in favor of the Comcation.

CONCLUSION

The DID lines in question in the present case do not give Comcation the **access** or **privilege** of use necessary to bring the circuits within the definition of "local telephone service" in Section 4252(a)(1). At best, the Government will show that the definition in Section 4252(a)(1) is ambiguous and must be manipulated and explained away to fit Comcation's direct inward dial circuit purchases into the definition of "local telephone service." If this Court finds that there is doubt as to whether or not the circuits are within the scope of the definition of local telephone service, that doubt must be resolved in favor of the Taxpayer, as a matter of law. As such, whether the Court accepts the plain meaning of the language or recognizes the ambiguities of the section argued by the Government, we would respectfully ask this Court to grant Comcation's request for refund in the amount of $10,339.22, plus appropriate interest.

6/28/06
Date

Respectfully submitted,

Anthony C. Gulotta, Esquire
PA Atty. ID #82081
Anderson & Gulotta, P.C.
1110 North Mountain Road
Harrisburg, PA 17112
(717) 635-7145
Fax (717) 541-5434
tgulotta@fbstax.com
Attorney for Plaintiff

# Comcation Network Diagram



Back to Search Results List
Add Document to Keep List
Previous Document in List
Print Text Only
Read Previous
Export to File
Read Next
First Search Term



# LTR-RUL, UIL No. 4251.00-00 Communications tax (Taxable v. not taxable), Letter Ruling 200133008, Added to CCH Online, (Aug 20,2001)

*[The IRS did not release LTR 200133007.]*
**Letter Ruling 200133008, May 24, 2001**
CCH IRS Letter Rulings Report No. 1277, 08-22-01
IRS REF: Symbol: CC:PSI:8-PLR-104339-01

**Added to CCH Online (Aug 20,2001)**

**Uniform Issue List Information:**

UIL No. 4251.00-00

Communications tax (Taxable v. not taxable)

[Code Sec. 4251]

This is in response to a letter ruling request regarding Taxpayer's responsibility for the excise tax imposed by §4251 of the Internal Revenue Code on amounts paid for communication services. Your authorized representative submitted this request on your behalf. Taxpayer has represented the following.

Taxpayer builds communication networks and sells access to these networks to internet service providers (ISPs). ISPs provide their customers access to the ISPs' services via Taxpayer's communication networks.

To build the networks Taxpayer purchases from local exchange carriers (LECs) two types of line services. Taxpayer purchases local primary rate interface (PRI) line service between the LEC's central office, where ISPs' customers' calls are received, and Taxpayer's modem bank. This PRI line service is a one way line service that permits Taxpayer to receive, but not to initiate, voice and data transmissions. Taxpayer also purchases other line services that connect its modem bank to its data network and ultimately to the ISPs' services (other line services). Taxpayer sells to ISPs access to these line services.

An ISP's customers access the ISP's services by calling via a modem into the LEC's central office. The customer's call is then routed to Taxpayer's modem bank over a PRI line. At the modem bank, the customer's call is routed over other line services to the Taxpayer's data network and ultimately the ISP's services.

Section 4251 imposes a tax on amounts paid for communications services. The term communications services means local telephone service, toll telephone service, and teletypewriter exchange service. Section 4251(a)(2) provides that the tax is paid by the person paying for the service. Under §4291 , the person receiving the payment for the service is responsible for collecting the tax from the person making the payment.

Section 4252(a) defines local telephone service as: (1) the access to a local telephone system and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and (2) any facility or service provided in connection with a service described in (1). The term local telephone service does not include any service which is a toll telephone service or a private communication service.

Section 4252(b) defines toll telephone service as: (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and

EXHIBIT B

(B) the charge is paid in the United States, and (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with the service is located.

Taxpayer's purchase of the PRI line service and the other line services do not provide Taxpayer with the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of a local telephone system. Therefore, Taxpayer's payments to the LECs for its line services are not amounts paid for local telephone service as defined in §4252(a) . Likewise, Taxpayer's sale of access to these line services does not give ISPs the privilege of communication as defined in §4252(a) . Therefore, amounts paid by the ISPs to Taxpayer for access to these line services are not amounts paid for local telephone service as defined in §4252(a) .

Taxpayer's purchase of the PRI line service and the other line services do not provide Taxpayer with telephonic communication for which there is a toll charge for each individual communication or the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area that is outside the local telephone system area in which the station provided with the service is located. Therefore, Taxpayer's payments to the LECs for its line services are not amounts paid for toll telephone service as defined in §4252(b) . Likewise, Taxpayer's sale of access to these line services does not give ISPs the privilege of toll telephone service as defined in §4252(b) . Therefore, amounts paid by the ISPs to Taxpayer for access to these line services are not amounts paid for toll telephone service as defined in §4252(b) . Neither the amounts Taxpayer pays to the LECs for line services nor the amounts paid to Taxpayer by the ISPs for access to these line services are for teletypewriter exchange service as described in §4252(c) .

Accordingly, based on Taxpayer's representations:

(1) Amounts paid by Taxpayer to the LECs for the purchase of PRI line service are not subject to the communications excise tax imposed by §4251 .

(2) Amounts paid by Taxpayer to the LECs for the purchase of other line services from its modem bank to ISPs' services are not subject to the communications excise tax imposed by §4251 .

(3) Amounts paid to Taxpayer by ISPs for providing access over the lines described above are not subject to the communications excise tax imposed by §4251 . Consequently, Taxpayer has no collection obligation under §4291 with respect to these amounts.

This ruling letter is directed only to the taxpayer who requested it. Section 6110(k)(3) provides that it shall not be used or cited as precedent.

Sincerely, Associate Chief Counsel (Passthroughs and Special Industries), Bernard Weberman, Assistant to the Branch Chief, Branch 8.

---

Back to Search Results List
Add Document to Keep List
First Search Term
Previous Document in List
Print Text Only
Export to File
Read Previous
Read Next

[ Return to top of document ]
Click here to download the link templates for your publications.

*We welcome your comments and suggestions on our web site.*
*Please send them to CSINTNET@cch.com*