**No. 05-515 T**
**(Judge Allegra)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

COMCATION, INC.,

Plaintiff

v.

THE UNITED STATES,

Defendant

DEFENDANT'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

EILEEN J.O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
G. ROBSON STEWART
JACOB E. CHRISTENSEN
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0878

## Table of Contents


| | Page |
|---|---|
| Defendant's Memorandum of Contentions of Fact and Law. | 1 |
| Introduction. | 1 |
| Statement of the Issue. | 2 |
| Contentions of Fact. | 2 |
| Contentions of Law. | 4 |
| 1. The history and application of the federal excise tax on communications services. | 4 |
| 2. The communication excise tax statutes applicable in this action. | 6 |
| 3. The capability of a communication service, not just its use, governs the imposition of the excise tax. | 7 |
| 4. Several long-standing Revenue Rulings provide relevant examples of services which constitute taxable local telephone service. | 9 |
| 5. Plaintiff erroneously claims that its Dial Access service is not subject to taxation under § 4251. | 13 |
| 6. Plaintiff's reliance on Rev. Rul. 79-405 is misplaced because the services at issue there are not analogous to plaintiff's Dial Access service. | 17 |
| 7. Plaintiff's reliance on Private Letter Ruling 200133008 is misplaced because it has been rescinded and such IRS written determinations may not be cited for any purpose. | 19 |
| Conclusion. | 21 |

**Page**

## Table of Authorities

**Cases:**

*Clayton v. United States*, 33 Fed. Cl. 628 (1995) *aff'd*, 91 F.3d 170 (Fed.Cir. 1996), *cert. denied*, 519 U.S. 1040. . . . . . . . . . . . . . . . 20

*Comdata Network, Inc. v. United States*, 21 Cl. Ct. 128, 130-131 (1990). . . . . . . . . . . . . 7, 8

*Exxon Corp. v. United States*, 45 Fed. Cl. 581 (1999) *aff'd in part, rev'd in part on other grounds*, 244 F.3d 1341 (Fed.Cir. 2001). . . . . . . . . . . . . . 20

*Piccadilly Cafeterias, Inc. v. United States*, 36 Fed. Cl. 330 (1996). . . . . . . . . . . . . . . . . 20

*Reliant Energy Inc. v. United States*, 45 Fed. Cl. 302 (1999). . . . . . . . . . . . . . . . . 20

*Snap-On Tools, Inc. v. United States*, 26 Cl.Ct. 1045, 1060 (1992), *aff'd*, 26 F.3d 137 (Fed.Cir. 1994). . . . 20

*Trans-Lux Corp. v. United States*, 696 F.2d 963 Fed. Cir. 1982). . . . . . . . . . . . . . . . . . . . . 6

**Statutes:**

Emergency Revenue Law of October 22, 1914, ch. 331, § 22, 38 Stat. 745, 761. . . . . . . . . . . . . . . . . . 5

Internal Revue Code of 1954(26 U.S.C.):

§ 4251. . . . . . . . . . . . . . . . . . 1, 2, 5, 6, 16

§ 4252. . . . . . . . . . . . . . . . . . . . . *Passim*

§ 4253. . . . . . . . . . . . . . . . . . . . . . . . 5

§ 4254. . . . . . . . . . . . . . . . . . . . . . . . 5

§ 6110. . . . . . . . . . . . . . . . . . . . . . . 19

Page

**Statutes (Continuation):**


Revenue Act of 1932, ch. 209, § 701,
47 Stat. 169, 270. . . . . . . . . . . . . . . . . . . . . 5

Spanish-American War. Spanish War Act of 1898,
ch. 448, § 25, 30 Stat. 448, 460 (1898). . . . . . . . . . 5

The Excise Tax Reduction Act of 1965,
Pub. L. No. 89-44, §§ 302, 809,
79 Stat. 136 ("1965 ETRA"). . . . . . . . . . . . . . . . 5


**Miscellaneous:**


H.R. Rep. No. 63-1163 1 (1913). . . . . . . . . . . . . . . . 5

H.R. Rep. No. 83-1337 A325 (1954). . . . . . . . . . . . . . 5

H.R. Rep. No. 658, 94th Cong., 1st Sess. 322 (1976), *reprinted in* 1976-3 C.B. (Vol. 2). . . . . . . . . . . . . . . . . . 19

Private Letter Rulings:

200133008. . . . . . . . . . . . . . . . . . . . . . 19

200242021. . . . . . . . . . . . . . . . . . . . . . 19

Revenue Rulings:

73-171, 1973-1 C.B. 445. . . . . . . . . . . . . . . 10

75-102, 1975-1 C.B. 351. . . . . . . . . . . . . . 9, 12

77-196, 1977-1 C.B. 343. . . . . . . . . . . . . 10, 13

79-245, 1979-2 C.B. 380. . . . . . . . . . . . . . . 10

79-405, 1979-2 C.B. 383. . . . . . . . . . . . . . 16-18

89-84, 1989-1 C.B. 296. . . . . . . . . . . . . . . . 12

S. Rep. No. 68-398 1 (1924). . . . . . . . . . . . . . . . . 5

S. Rep. No. 72-665 1 (1932). . . . . . . . . . . . . . . . . 5

S. Rep. No. 89-324, 35 *reprinted in*
1965 U.S.C.C.A.N. 1690, 1724-1727. . . . . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 05-515 T

(JUDGE ALLEGRA)

COMCATION, INC.,

Plaintiff

v.

THE UNITED STATES,

Defendant

---

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

---

Pursuant to paragraph 14 of RCFC Appendix A, and the Court's Order of April 24, 2006, defendant submits the following memorandum of contentions of fact and law.

**INTRODUCTION**

In this action, Comcation seeks a refund of $10,339.22 in telephone excise tax under § 4251 with respect to taxes paid during the period October 1, 1998, through February 1, 2002. The taxes were collected by Comcation's telephone carriers with respect to certain telephone services purchased by Comcation in connection with its business of providing dial-access internet service to the public. Comcation asserts that it is not liable for excise tax on

these telephone services because they are purportedly outside the scope of § 4251.

**STATEMENT OF THE ISSUE**

Whether amounts Comcation paid for local telephone services in connection with its business of providing dial-access internet service are subject to the three percent excise tax imposed on "amounts paid for communications services" by § 4251.

**CONTENTIONS OF FACT**

Defendant expects the following evidence to be adduced at the trial scheduled for September 11, 2006:

Comcation is an internet service provider (ISP), which established and maintained a local internet access service in southeastern Pennsylvania. This service allowed anyone with local telephone service in southeastern Pennsylvania to become a Comcation customer and to connect to the internet through Comcation's service. Thus, Comcation's customers were able to establish two-way communication through Comcation's service. To operate its service, Comcation purchased various telecommunication lines and other services from several telecommunication providers, including Bell Atlantic, TCG, AT&T, and XO Communications.

The telecommunication services and Comcation's equipment allowed Comcation to carry its customer's traffic from the point they accessed (through local dial-up telephone service) plaintiff's network to the internet, and vice-versa. At issue here are certain telecommunication lines Comcation purchased from telecommunication

companies to provide dial-up telephone service (Dial Access) for their customers to access its network and to reach the internet. These Dial Access lines were typically primary rate interface (PRI) lines.[1] A PRI line is a transmission line capable of carrying 24 voice channels, but the PRI service uses one of the channels to carry signaling information for directing the transmissions on the other 23 channels.

In practice, a Comcation customer connects to Comcation's network by having his computer modem dial Comcation's local telephone number.[2] The call is routed by the local telephone company through one or more of the local telephone company's central offices to the central office which services Comcation's local access telephone lines–the PRI lines at issue here. The call travels on the PRI line leased by Comcation from the central office to Comcation's data center where its modems and servers are located. Thus, a direct connection between the customer's modem and Comcation's modem is established. Through this connection, the modems communicate with each other, and assuming that the customer provides proper authentication (user name and password), the customer would be able to access the internet through Comcation's

[1] There are several other types of telecommunication lines which provide service similar to PRI lines, but it does not appear that any of them are at issue here.

[2] Comcation typically had several telephone numbers available to its customers in each local calling area in which it offered internet access service.

equipment (routers and servers). The connection between the modems is of telephonic-voice quality. Significantly, anyone in the local telephone system could dial any of Comcation's local telephone numbers and reach Comcation's modems over the PRI lines.[3]

Plaintiff claims that the PRI lines were provisioned by the telecommunication companies to receive only incoming calls and could not be used to make outgoing calls. Defendant, however, does not believe that plaintiff will be able to prove that the PRI lines were not capable of being used to initiate outgoing calls as well as receiving incoming calls. In any event, whether or not Comcation used the PRI lines for only incoming service is irrelevant to the determination that the PRI lines constitute taxable local service, as discussed below.

Since Comcation's PRI service lines allowed any person in the local telephone system to dial one of Comcation's Dial Access service telephone numbers, reach one of plaintiff's modems, and establish two-way, voice-quality communication with the modem, the PRI service lines constitute local telephone service.

## CONTENTIONS OF LAW

### 1. The history and application of the federal excise tax on Communications Services

The excise tax on telephone service has long played a significant role in raising revenue for the public fisc. The first

[3] If the caller does not provide authentication information, Comcation's system would end the call.

federal tax on telephone service was enacted as a temporary measure in 1898 to help finance the Spanish-American War. Spanish War Act of 1898, ch. 448, § 25, 30 Stat. 448, 460 (1898). The tax was revived in 1914 and remained in effect until Congress repealed it in 1924, when the Treasury Department projected sizeable budget surpluses for several years. Emergency Revenue Law of October 22, 1914, ch. 331, § 22, 38 Stat. 745, 761; H.R. Rep. No. 63-1163 at 1 (1913); S. Rep. No. 68-398 at 1-2, 9 (1924). When recurring large deficits reappeared, Congress brought the tax back in 1932. Revenue Act of 1932, ch. 209, § 701, 47 Stat. 169, 270; S. Rep. No. 72-665 at 1, 3. A telephone excise tax has been continuously in effect since 1932.

When Congress enacted the Internal Revenue Code of 1954, it rearranged the provisions of the Code imposing the excise tax on communications services to give them their current structure. H.R. Rep. No. 83-1337, at A325 (1954). As is the case under current law, Congress imposed the tax under § 4251, defined the services subject to tax in § 4252, specified the exemptions from tax in § 4253, and set out the computations in § 4254. By defining "local telephone service" as "any telephone service not taxable as [one of the four other communication services defined in § 4252]," Congress was clear that it intended to tax all telephone service not specifically exempted.

The enactment of The Excise Tax Reduction Act of 1965, Pub. L.No. 89-44, § 809, 79 Stat. 136 ("1965 ETRA") made a number of

changes to excise tax on communications services: (1) it called for a gradual reduction of the tax rate over the years 1966 through 1969 and scheduled the tax for elimination in calendar year 1969;[4] (2) it expanded the exemption provided to private communications services to counter the competitive disadvantage that telephone companies faced as a result of untaxed private equipment performing similar services; and (3) it immediately repealed the tax on telegraph service and the tax on wire and equipment service. See 1965 ETRA § 302; S. Rep. No. 89-324, at 35-36, reprinted in 1965 U.S.C.C.A.N. 1690, 1724-1727. There have not been any relevant changes to the communications excise tax statutes since 1965.

**2. The communication excise tax statutes applicable in this action**

Section 4251 imposes a three percent federal communications excise tax on amounts paid for certain "communications services." Section 4251(b) identifies taxable "communications services" as including local telephone service, toll telephone service, and teletypewriter exchange service. As relevant here, § 4252(a) provides the definition of local telephone service:

> (a) Local telephone service.--For purposes of this subchapter, the term "local telephone service" means--
>
> > (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio

[4] Except for a belated reduction in the tax rate from 10 percent to 3 percent, these changes never became effective. See *Trans-Lux Corp. v. United States*, 696 F.2d 963, 966 (Fed. Cir. 1982).

telephone stations constituting a part of such local telephone system, and

(2) any facility or service provided in connection with a service described in paragraph (1).

The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d).

**3. The capability of a communication service, not just its use, governs the imposition of the excise tax**

The imposition of the communications excise tax is governed by the capability of the service, not just its use. Comdata Network, Inc. v. United States, 21 Cl. Ct. 128, 130-131 (1990). In Comdata, the company provided money transfer services by making funds available to individual truckers at authorized Comdata service centers throughout the country. Id. at 129. Typically, a trucker would request funds at a Comdata service center and an agent there would contact Comdata's offices by telephone to request authorization for the transaction. Ibid.

The request would be made either verbally or electronically. Ibid. In a verbal transaction, a Comdata service representative received a call from the service center agent and obtained the relevant information to process the request. Ibid. In an electronic transaction, the service center had automated equipment that allowed a service center agent to transmit a funds request and the relevant information electronically, through telephone lines, directly to the Comdata computer system. Ibid.

Both transactions used Wide Area Telecommunications Service (WATS), which provides long distance telephone service for selected service areas at bulk rates. Ibid. When the service center agent dialed the Comdata number, the call was transmitted over the local telephone system and connected with the supplier of Comdata's WATS line. Ibid. The call was completed over an "INWATS" access line (for incoming WATS calls) to Comdata's office. Ibid. There were no restrictions on who could call Comdata's INWATS numbers, but such a call only would access a randomly-selected Comdata customer service representative. Id. at 130. The in-coming call could not be patched through to other numbers and no outgoing calls could be made from Comdata's office using this service.[5] Ibid.

Comdata argued that the incidence of the excise tax is governed not by the capability of the service provided but rather by the actual use made of it. Ibid. The court found, however, it was clear that Comdata's WATS service was a toll telephone service under § 4252(b)(2) because it was a service that entitled Comdata to the privilege of an unlimited number of telephone calls to or from a substantial portion of the telephone stations in a distant service area. Ibid. The court stated that "the tax is applicable because the service provided [Comdata] grants it the right to utilize the telephone lines to communicate with a substantial number of stations in a distant area. That the service may not, in

[5] Comdata had a separate "OUTWATS" service for outgoing calls.

fact, be so used by plaintiff is irrelevant to the existence of the privilege." Id. at 131.

### 4. Several long-standing Revenue Rulings provide relevant examples of services which constitute taxable local telephone service

Several long-standing revenue rulings provide examples of telecommunications services that constitute local telephone service because they provide access to the local telephone system through telephonic, voice-quality connections and two-way communication with substantially all telephone customers in the local telephone system.

The first, Rev. Rul. 75-102, 1975-1 C.B. 351, involved a time-of-day and weather-forecast (hereinafter "TOD/WF") telephone service purchased from a telephone company by businesses in order to advertise to callers using the TOD/WF service. When a business purchased the service, the telephone company assigned a specific local number for the service and persons in the local telephone system calling into the number would hear an automatic, tape-recording of the pertinent information as well as the advertising message of the business. The business was billed on the basis of the number of incoming calls and a charge for the tape recording service. Based on the ruling's description of the service, it is clear that the service was designed only to receive incoming calls and that the subscribing business could not use the service to initiate outgoing calls. The ruling held that the service was taxable local service because it provided access to the local

telephone system and the privilege of telephonic quality communication with all persons having telephones in the local system.

The holding of Rev. Rul. 75-102 was re-affirmed in Rev. Rul. 77-196, 1977-1 C.B. 343, which concerned automatic call distributing (hereinafter "ACD") systems used by businesses to handle a large volume of calls.[6] The ACD system in question was provisioned by the telephone company to be capable of receiving only incoming calls and no outgoing calls could be made through the ACD system. The ruling reasoned that in defining local telephone service, § 4252(a) "makes no distinction between systems that provide access to a local telephone network only by receiving calls and systems that both receive and originate calls. Id. at 344. Thus, in finding the ACD system to be a taxable local telephone service, the ruling specifically concluded that "the fact that in the instant case the basic ACD system switching equipment can only receive incoming calls from a local telephone system is not material to the tax determination." Ibid.

Revenue Ruling 79-245, 1979-2 C.B. 380, also confirms the holding of Comdata. In Rev. Rul. 79-245, a business leased certain data processing and transmission equipment, including a computer, terminals, a communication control unit, and modems. The computer

---

[6] An ACD system handles a large volume of incoming calls by distributing the incoming calls to attendant positions when they become available. Rev. Rul 73-171, 1973-1 C.B. 445.

handled data received over the regular telephone network from terminals at other locations. The communication control unit served as the interface between the computer and all the communication lines and terminals in the system. The modems converted the computer signals into signals that could be transmitted over telephone lines. While these telephone signals were the same type used to transmit voice, the modems were designed only for nonvoice transmission and produced a signal which was usable only for transmission to other computer stations.

The business reserved the computer lines for nonvoice data transmission only. The business paid monthly charges to the local telephone company for local telephone service, but, instead of having standard telephones connected to the telephone lines the business had its computer and terminals connected to the telephone lines. Thus, the system was interconnected through the local telephone exchange and anyone anywhere could connect to a station in the system by dialing the telephone number assigned by the local telephone company to that station. However, to prevent access to the system from outside the particular business, the numbers were unlisted and a special security code had to be used to activate the equipment after the telephone connection was established. Furthermore, intercommunication between teleprocessing stations only could be established if the stations had synchronized transmission speed and compatible programming. Thus, while anyone could dial the telephone number, only a station with specially

programmed, compatible computer equipment could communicate with another teleprocessing station.

Based on these facts, the ruling held that the amounts paid to the local telephone company for the local telephone service used with the teleprocessing equipment were subject to the excise tax. The ruling reasoned that because the business had access to the local telephone exchange system through the lines used with the computer system, it had the privilege of telephonic quality communication with substantially all persons having telephones in the local system, within the meaning of § 4252(a) and it was immaterial whether the business exercised the privilege.

Finally, Rev. Rul. 89-84, 1989-1 C.B. 296, involved a public announcement service (hereinafter "PAS") which allowed callers in a local telephone system to call one or more numbers of an information provider (hereinafter "IP") and hear recorded information on stock prices, sports scores, soap opera summaries, and news and weather reports. The telephone company billed the caller for each call made to one of the PAS service numbers. Of that charge, the telephone company retained a portion as a transmission charge to the IP and remitted the remainder to the IP which supported the IP's information service. Based on the facts presented in the ruling, it is clear that the service only allowed incoming calls and did not provide the IP with the ability to make outgoing calls on the PAS service numbers provided under the service. Consistent with Rev. Rul. 75-102, Rev. Rul. 89-84 held

that the portion of the telephone company's charge to the IP for transmission for the call was taxable because it provided the IP with access to the local telephone system and the privilege of telephonic quality communication with all persons having telephones in the local system.

Accordingly, the revenue rulings clearly support the plain meaning of the statute that a service which provides any access (incoming, outgoing, or both) to the local telephone system and the privilege to have telephonic quality communication with any other telephone on the local system is taxable as local service. As the rulings confirm, § 4252(a) does not define local service on the basis on the ability to initiate calls, but rather, on the basis of any access to the local telephone system. As Rev. Rul. 77-196 demonstrates, even if a service is provisioned by the telephone company, and not the customer, to handle only income calls, it is still a taxable local telephone service because it allows any telephone in the local telephone system to reach the customer's telephone line.

**5. Plaintiff erroneously claims that its Dial Access service is not subject to taxation under § 4251**

Plaintiff contends that its Dial Access telephone service does not satisfy the definition of a "communication service" in § 4252. Plaintiff asserts that the PRI service lines do not constitute local telephone service under § 4252(a) because Comcation purportedly could not initiate phone calls on the PRI lines.

Accordingly, Comcation argues that it did not have the privilege of telephonic quality communication with substantially all persons in the local telephone system. This contention--which is tantamount to arguing that a shopkeeper's telephone usage should not be taxed if the shopkeeper locks his store telephone in a safe and answers it only if one of his customers call--disregards the statutory mandate of § 4252(a), which defines the taxability of local telephone service in terms of the service's capability, i.e., the "privilege" of the service provided, as Comdata and the relevant revenue rulings make clear. Since the Dial Access service purchased by Comcation provided it with the capability of telephonic-voice quality, two-way communication with substantially all persons on the local telephone system because anyone in the local calling area could call one of Comcation's local telephone numbers and establish a connection with its modems, it is subject to the federal communications excise tax.

Specifically, § 4252(a) states that it is the "access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system," which governs taxability of the service. Access is defined as "permission, liberty, or ability to enter, approach, communicate with, or pass to and from." Webster's 3rd New Ed. (1986). In this case, the PRI lines clearly provide plaintiff with access to the local telephone system because it is undisputed that

any person in the local telephone system could call through one of Comcation's PRI service lines and connect to the Comcation's modem–the entry point to its network.[7] This fact clearly establishes that the PRI service lines gave plaintiff access to the local telephone system and the "privilege of telephonic quality communication with substantially all persons having telephone" service on the local system--which is taxable under § 4252(a). Moreover, once a customer gained access to the Internet through Comcation's network, a two-way communication between the customer's computer and the Internet would be established through the PRI service lines. Comcation's ability to limit its customers does not negate the fact that Comcation had the capability and the privilege, if it so desired, to use its equipment to connect any caller in the local calling area to the Internet.

Plaintiff's argument that the incoming-only restriction on the PRI service lines excludes them from taxation is very similar to the argument asserted by the plaintiff in Comdata.[8] The WATS lines at issue in Comdata also were restricted to either incoming or

---

[7] Whether or not a non-customer could have proceeded past plaintiff's network entry point is irrelevant for determining whether the Dial Access service is taxable. The simple fact that anyone on the local telephone system could have called plaintiff's Dial Access service lines is sufficient under the statute.

[8] Defendant asserts that under the statute, it is legally irrelevant as to whether the local service lines are incoming-only or outgoing-only. Defendant, however, disputes plaintiff's claim that its PRI lines were restricted to incoming-only service and were not capable of being used for outgoing service as well.

outgoing calls. Plaintiff's PRI service is the functional equivalent to Comdata's service, except Comdata's calls were long distance calls, whereas plaintiff's incoming calls were local. That difference, though, does not negate the applicability of the holding of Comdata to the facts of this case. The court rejected Comdata's argument when it held that the tax was applicable because the service granted Comdata the right to communicate with substantially all persons in the calling area at issue, whether or not Comdata made such use of the service in that fashion.

Moreover, Rev. Rul. 79-245 establishes that the use of local telephone service, which provides access to the local telephone system and substantially all persons in the local telephone system, is taxable even if the local service only is used for data transmission by a restricted number of verified users. Comcation's PRI service allows its customers, and all other persons, in the local telephone system to dial into the local Comcation's local telephone numbers. While plaintiff may restrict access to its network beyond its network access point only to customers, anyone in the local telephone system could reach plaintiff's access point through the Dial Access service lines. Accordingly, the PRI service lines give plaintiff access to the local telephone system and grants it the right to communicate with substantially all persons on the local telephone system--which meets the definition of local telephone service under § 4252(a) and results in the taxation of the Dial Access service under § 4251.

**6. Plaintiff's reliance on Rev. Rul. 79-405 is misplaced because the services at issue there are not analogous to plaintiff's Dial Access service**

Plaintiff asserts that Rev. Rul. 79-405, 1979-2 C.B. 383, supports its claim that the PRI service lines do not satisfy the definition of local telephone service. The facts of Rev. Rul. 79-405, however, simply do not support plaintiff's position, but rather, actually highlight the taxable nature of the Dial Access service. The issue in the ruling was whether three different types of "long-distance services provided by a communications company are subject to the federal excise tax on toll telephone services." Ibid.

Service 1 was a private line, point-to-point service supplied by Company X which owned a microwave network which had microwave terminals in 15 different cities. Ibid. The service provided X's customers with exclusive, private-line channels between the cities. Ibid. X connected its microwave terminals in each city to its customers' locations through local telephone lines which X leased from the local telephone companies. Ibid. Thus, using this service, a customer could connect, through an exclusive channel, a dedicated station at its business location in one city to a dedicated station at its business location in a second city. Ibid. With this service, once a connection to the second city station was established, a call could then be interconnected to the customer's local telephone system through its separately paid (and taxed) local telephone service in the second city. Ibid.

Service 2 was similar to Service 1 except the customer did not have an exclusive, private channel, but rather shared a number of channels between two cities with other customers of X. Ibid. Again, the calls could be made only between dedicated stations at the customer's business locations which connected through local lines to X's terminals. Unlike Service 1, though, Service 2 did not make it possible to interconnect a call between dedicated stations in two different cities to the local telephone system of the city being called. Id. at 384.

Service 3 was not restricted to calls between dedicated stations. Ibid. A customer could call from any telephone and connect to X's terminal using a unique identification code, and the call then would be connected to the distant city's local telephone system by the X's microwave network and leased local telephone lines. Ibid. Thus, X's leased local lines were not involved.

Most significantly for the purposes of the Dial Access issue, the revenue ruling explicitly states that the "tax on amounts paid to the local telephone companies for the local telephone service supplied by these companies in the three services described above is not in issue here." Ibid. Thus, the only question in the ruling was whether the inter-city connection was taxable, not the local telephone system inter-connection, which was separately paid by X and subject to excise tax. The local service purchased by X to connect its microwave terminals to its customers clearly provided X with taxable local service because it gave X access to

any person in the local telephone system who might become a customer. This is similar to the role the PRI service lines played in plaintiff's network. Any person in a local telephone system could utilize plaintiff's Dial Access numbers to reach plaintiff's terminals to gain access to plaintiff's network. Thus, under § 4252(a), the Dail Access service is taxable local telephone service.

**7. Plaintiff's reliance on Private Letter Ruling 200133008 is misplaced because it has been rescinded and such IRS written determinations may not be cited**

Plaintiff cites Private Letter Ruling 200133008 to support its claim that the PRI lines do not constitute taxable local telephone service. Initially, Comcation's reliance on PLR 200133008 is misplaced because it has been revoked by PLR 200242021. The revocation was appropriate because PLR 200133008 is devoid of any meaningful analysis of the issue and fails to consider the clear mandate of the legal principles discussed above.

Moreover, Section 6110(k)(3) expressly prohibits the use or citation as precedent of "written determinations" such as PLRs. A principal reason for declining to give PLRs any weight is that such rulings are not subject to an adequately high level of review within the IRS (and are not reviewed by the Department of the Treasury). See H.R. Rep. No. 658, 94th Cong., 1st Sess. 322 (1976), reprinted in 1976-3 C.B. (Vol. 2) 1014:

> If all publicly disclosed written determinations were to have precedential value, the IRS would be required to subject them to considerably greater review than is

> provided under present procedures. Your committee believes that resulting delays in the issuance of determinations would mean that many taxpayers could not obtain timely guidance from the IRS and the rulings program would suffer accordingly.

In addition, courts have refused to consider PLRs as any form of precedent. See Exxon Corp. v. United States, 45 Fed.Cl. 581, 668 n. 180 (1999) (finding a letter ruling cited by the plaintiff "totally irrelevant") aff'd in part, rev'd in part on other grounds, 244 F.3d 1341 (Fed.Cir. 2001); Reliant Energy Inc. v. United States, 45 Fed.Cl. 302, 307 n. 8 (1999); Piccadilly Cafeterias, Inc. v. United States, 36 Fed.Cl. 330, 333 (1996); Clayton v. United States, 33 Fed.Cl. 628, 639 (1995) (because of the statutory prohibition, the court "cannot rely on [a] letter ruling") aff'd, 91 F.3d 170 (Fed.Cir. 1996) (table), cert. denied, 519 U.S. 1040; Snap-On Tools, Inc. v. United States, 26 Cl.Ct. 1045, 1060 (1992), aff'd, 26 F.3d 137 (Fed.Cir. 1994) (table). Accordingly, the Court should not consider PLR 200133008 for any purpose.

## CONCLUSION

Based on the foregoing, the United States submits that plaintiff will not be able to establish that its PRI service lines do not constitute local telephone service for the purposes of § 4251. Accordingly, because plaintiff bears the burden of proof in this case, the Court must dismiss the complaint with prejudice.

Respectfully submitted,

July 28, 2006
Date

s/Jacob Christensen
JACOB E. CHRISTENSEN
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0878

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief
Court of Federal Claims Section
G. ROBSON STEWART
Reviewer

July 28, 2006
Date

s/G. Robson Stewart
Of Counsel

Attorneys for Defendant