Cornell Law School

LII / Legal Information Institute

# U.S. Code collection



## § 4251. Imposition of tax

*How Current is This?*



**(a) Tax imposed**

**(1) In general**

There is hereby imposed on amounts paid for communications services a tax equal to the applicable percentage of amounts so paid.

**(2) Payment of tax**

The tax imposed by this section shall be paid by the person paying for such services.

**(b) Definitions**

For purposes of subsection (a)—

**(1) Communications services**

The term "communications services" means—

**(A)** local telephone service;

**(B)** toll telephone service; and

**(C)** teletypewriter exchange service.

**(2) Applicable percentage**

The term "applicable percentage" means 3 percent.

**(c) Special rule**

For purposes of subsections (a) and (b), in the case of communications services rendered before November 1 of a calendar year for which a bill has not been rendered before the close of such year, a bill shall be treated as having been first rendered on December 31 of such year.

**(d) Treatment of prepaid telephone cards**

**(1) In general**

For purposes of this subchapter, in the case of communications services acquired by means of a prepaid telephone card—

**(A)** the face amount of such card shall be treated as the amount paid for such communications services, and

**(B)** that amount shall be treated as paid when the card is transferred by any telecommunications carrier to any person who is not such a carrier.

**(2) Determination of face amount in absence of specified dollar**

PLAINTIFF'S EXHIBIT
tabbies
A

**amount**

In the case of any prepaid telephone card which entitles the user other than to a specified dollar amount of use, the face amount shall be determined under regulations prescribed by the Secretary.

**(3) Prepaid telephone card**

For purposes of this subsection, the term "prepaid telephone card" means any card or any other similar arrangement which permits its holder to obtain communications services and pay for such services in advance.



*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

Cornell Law School

LII / Legal Information Institute

# U.S. Code collection



## § 4252. Definitions

*How Current is This?*



**(a) Local telephone service**

For purposes of this subchapter, the term "local telephone service" means—

**(1)** the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and

**(2)** any facility or service provided in connection with a service described in paragraph (1).

The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d).

**(b) Toll telephone service**

For purposes of this subchapter, the term "toll telephone service" means—

**(1)** a telephonic quality communication for which

**(A)** there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and

**(B)** the charge is paid within the United States, and

**(2)** a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

**(c) Teletypewriter exchange service**

For purposes of this subchapter, the term "teletypewriter exchange service" means the access from a teletypewriter or other data station to the teletypewriter exchange system of which such station is a part, and the privilege of intercommunication by such station with substantially all persons having teletypewriter or other data stations constituting a part of the same teletypewriter exchange system, to which the subscriber is entitled upon payment of a charge or charges (whether such charge or charges are determined as a flat periodic amount, on the basis of distance and elapsed transmission time, or in some other manner). The term "teletypewriter exchange service" does not include any service which is "local telephone service" as defined in subsection (a).

**(d) Private communication service**

For purposes of this subchapter, the term "private communication service" means—

**(1)** the communication service furnished to a subscriber which entitles the subscriber—

**(A)** to exclusive or priority use of any communication channel or groups of channels, or

**(B)** to the use of an intercommunication system for the subscriber's stations,

regardless of whether such channel, groups of channels, or intercommunication system may be connected through switching with a service described in subsection (a), (b), or (c),

**(2)** switching capacity, extension lines and stations, or other associated services which are provided in connection with, and are necessary or unique to the use of, channels or systems described in paragraph (1), and

**(3)** the channel mileage which connects a telephone station located outside a local telephone system area with a central office in such local telephone system,

except that such term does not include any communication service unless a separate charge is made for such service.

Prev | Next

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

**Internal Revenue Service**
**Area Manager, SBSE Compliance Area**

**Department of the Treasury**

Date: 4-27-04

**Taxpayer Identification Number:**
23-2790031
**Form:**
8849
**Tax Period(s) Ended and Claim Amount:** 9/30/98
Quarters Ended 12/31/98, 3/31/99, 6/30/99, 9/30/99, 12/31/99, 3/31/00, 6/30/00, 9/30/00, 12/31/00, 3/31/01, 6/30/01, 9/30/01, 12/31/01
Total Claimed All Periods. ~~#10,277~~ $10,339
**Date Claim Received:**
February 27, 2002
**Person to Contact:**
Barry Brumbaugh
**Contact Telephone Number:**
(814) 533-4211 ext 117
**Employee Identification Number:**
23-06774
**Last date to Respond to this Letter:** 5-27-04

Comcation, Inc
875 N. Easton Road, Suite 6
Doylestown, PA 18901

Dear Mr. Gruin:

We examined your claim and propose:

☐ Partial disallowance, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form.*

☒ Full disallowance, as shown in the enclosed examination report or at the end of this letter. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form.*

☐ Full disallowance with additional tax due, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and the examination report.

*Note: If your claim involves a joint return, both taxpayers must sign the form(s).*

If you are a "C" Corporation filer, Section 6621(c) of the Internal Revenue Code provides for an interest rate 2% higher than the standard interest rate on deficiencies of $100,000 or more.

If you don't agree with our findings, you may request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still don't agree with our findings, we recommend that you request a conference with our Appeals Office. If you request a conference, we will forward your request to the Appeals Office and they will contact you to schedule an appointment.



PLAINTIFF'S EXHIBIT
tabbies
B

If the proposed change to tax is:

- $25,000 or less for *each* referenced tax period; you may send us a letter requesting Appeals consideration, indicating what you don't agree with and the reasons why you don't agree.

- More than $25,000 for *any* referenced tax period; you must submit a formal protest.

The requirements for filing a formal protest are explained in the enclosed Publication 3498, *The Examination Process.* Publication 3498 also includes information on your *Rights as a Taxpayer* and the *IRS Collection Process.*

If you don't respond by the date shown in the heading of this letter, we will process your case based on the adjustments shown in the enclosed examination report or the explanations given at the end of this letter.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter. Thank you for your cooperation.

Sincerely yours,

Stephen L. Daige
Area Manager, SBSE Compliance Area 1

Enclosures:
☐ Examination Report
Form 2297
☐ Form 3363
Publication 3498
Envelope

**Reason for Disallowance:** SEE Form 886-A

Form 2297 (Rev. March 1982)

Department of the Treasury-Internal Revenue Service

# Waiver of Statutory Notification of Claim Disallowance

I, Comcation, Inc 23-2790031 (Name, SSN or EIN) of 875 North Easton Rd Suite 6, Doylestown, PA 18901 (Number, Street, City or Town, State, ZIP Code)

waive the requirement under Internal Revenue Code section 6532(a)(1 ) that a notice of claim disallowance be sent to me by certified or registered mail for the claims for credit or refund shown in column (d), below.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

**Claims**

| (a) Taxable Period Ended | (b) Kind of Tax | (c) Amount of Claim | (d) Amount of Claim Disallowed |
|---|---|---|---|
| 9/30/98 | Communication Tax | 92.24 | 92.24 |
| 12/31/98 | Communication Tax | 783.13 | 783.13 |
| 3/31/99 | Communication Tax | 834.62 | 834.62 |
| 6/30/99 | Communication Tax | 867.85 | 867.85 |
| 9/30/99 | Communication Tax | 715.05 | 715.05 |
| 12/31/99 | Communication Tax | 816.64 | 816.64 |
| 3/31/00 | Communication Tax | 834.41 | 834.41 |
| 6/30/00 | Communication Tax | 830.52 | 830.52 |
| 9/30/00 | Communication Tax | 937.96 | 937.96 |
| 12/31/00 | Communication Tax | 803.38 | 803.38 |
| 3/31/01 | Communication Tax | 636.90 | 636.90 |
| 6/30/01 | Communication Tax | 855.02 | 855.02 |

If you file this waiver for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

Your Signature ➤ ______ (Date signed)

Spouse's Signature If A Joint Return Was Filed ➤ ______ (Date signed)

Taxpayer's Representative Sign Here ➤ [signature] 5/17/04 (Date signed)

Partnership/ Corporate Name: ______

Partners/ Corporate Officers Sign Here ➤ ______ (Title) ______ (Date signed)

➤ ______ (Title) ______ (Date signed)

NOTE - Filing this waiver within 6 months from the date the claim was filed will not permit filing a suit for refund before the 6-month period has elapsed unless a decision is made by the Service within that time disallowing the claims.

Form 2297
(Rev. March 1982)

Department of the Treasury-Internal Revenue Service

# Waiver of Statutory Notification of Claim Disallowance

I, Comcation, Inc 23-2790031 (Name, SSN or EIN) of 875 North Easton Rd Suite 6, Doylestown, PA 18901 (Number, Street, City or Town, State, ZIP Code)

waive the requirement under Internal Revenue Code section 6532(a)(1 ) that a notice of claim disallowance be sent to me by certified or registered mail for the claims for credit or refund shown in column (d), below.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

**Claims**

| (a) Taxable Period Ended | (b) Kind of Tax | (c) Amount of Claim | (d) Amount of Claim Disallowed |
|---|---|---|---|
| 9/30/01 | Communication Tax | 665.86 | 665.86 |
| 12/31/01 | Communication Tax | 665.64 | 665.64 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

If you file this waiver for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

Your Signature → ____________ (Date signed)

Spouse's Signature If A Joint Return Was Filed → ____________ (Date signed)

Taxpayer's Representative Sign Here → [signature] 5/17/04 (Date signed)

Partnership/ Corporate Name: ____________

Partners/ Corporate Officers Sign Here → ____________ (Title) ____________ (Date signed)

→ ____________ (Title) ____________ (Date signed)

NOTE - Filing this waiver within 6 months from the date the claim was filed will not permit filing a suit for refund before the 6-month period has elapsed unless a decision is made by the Service within that time disallowing the claims.

| Form 886-A (REV JANUARY 1994) | EXPLANATIONS OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Comcation, Inc | TAX IDENTIFICATION NUMBER 23-2790031 | YEAR/PERIOD ENDED 12/31/98 through 12/31/01 |

| Quarter Ended | Type of Tax | Claim Amount | Claim Allowed | Claim Disallowed |
|---|---|---|---|---|
| 9/30/98 | Communication Tax | $ 92.24 | $0 | $ 92.24 |
| 12/31/98 | Communication Tax | $783.13 | $0 | $783.13 |
| 3/31/99 | Communication Tax | $834.62 | $0 | $834.62 |
| 6/30/99 | Communication Tax | $867.85 | $0 | $867.85 |
| 9/30/99 | Communication Tax | $715.05 | $0 | $715.05 |
| 12/31/99 | Communication Tax | $816.64 | $0 | $816.64 |
| 3/31/00 | Communication Tax | $834.41 | $0 | $834.41 |
| 6/30/00 | Communication Tax | $830.52 | $0 | $830.52 |
| 9/30/00 | Communication Tax | $937.96 | $0 | $937.96 |
| 12/31/00 | Communication Tax | $803.38 | $0 | $803.38 |
| 3/31/01 | Communication Tax | $636.90 | $0 | $636.90 |
| 6/30/01 | Communication Tax | $855.02 | $0 | $855.02 |
| 9/30/01 | Communication Tax | $665.86 | $0 | $665.86 |
| 12/31/01 | Communication Tax | $665.64 | $0 | $665.64 |
| Total | | $10,339.22 | $0 | $10339.22 |

At the time of submission of the claim, the 3rd quarter 1998 period had already expired. As a result, $93 related to the 3rd quarter 1998 was disallowed without consideration of tax law related to the issue claimed.

**Issue**

Is communication service provided to the taxpayer for use of various telephonic lines in its business as an internet service provider (isp) subject to the 3% tax imposed under IRC 4251?

**Facts**

The taxpayer operates as an internet service provider (ISP) located in Doylestown, PA. As an ISP, they are involved providing internet access to residential and business customers. In order to provide internet access to customers, ISPs typically purchase a series of telephonic lines which provide an eventual connection between the local access number and the NAP. The NAP is the point at which the transmission enters the internet cloud.

In order to gain access to the internet, the ISP customer's modem dials a local access number at the LEC (Local Exchange Carrier). The LEC is the local telephone company. The local access number is maintained at the LEC central office. The local access number is connected to a modem bank at the LEC. The modem bank is connected to routers, and the routers are connected to the NAP. After connecting to the NAP, information flows in both directions between the NAP and the customer's modem. The lines connecting the LEC local access number to the modem bank or PRI servers, high speed customers to routers, routers to routers, and routers to the NAP are telephonic quality lines purchased by the ISP from various communication companies. Vendors on this claim include Bell, XO, TCG, and AT&T.

| Form 886-A (REV JANUARY 1994) | EXPLANATIONS OF ITEMS | | SCHEDULE NO. OR EXHIBIT |
|---|---|---|---|
| NAME OF TAXPAYER Comcation, Inc | | TAX IDENTIFICATION NUMBER 23-2790031 | YEAR/PERIOD ENDED 12/31/98 through 12/31/01 |

The taxpayer filed one claim form 8849 which included a refund request covering the quarters ended 12/31/98 through 12/31/01. The claim form filed included a quarterly breakdown of amounts on which a refund has been requested. The refund requested was made up of fet charged on PRI connections (AT&T and TCG invoices described the service acquired as enhanced switched services-the POA indicates enhanced switched services is actually PRI), DS-1 Lines, and Dedicated ISDN connections to routers.

A summary of amounts claimed will be detailed below:

| | |
|---|---|
| PRI and DS-1 - XO | $2,379.16 |
| PRI-Enhanced Switched Services provided by AT&T and TCG | $1,663.38 |
| Dedicated ISDN Connections to Routers-Bell | $6,204.44 |
| Total Refund Requested | $10,246.98 |

Note #1-the account with XO indicated both DS-1 Service and PRI.

*PRI (Primary Rate Interface)*

These lines connect the local exchange carrier (LEC) central office and PRI Servers or modem banks associated with the ISP. Per Newton's Telecom Dictionary, 19th Edition, the term PRI includes…PRI is an ISDN term used internationally to refer to what essentially is an ISDN version of a T-1 trunk from the customer premises to the edge of the ISDN service provider network. Also known as 23B+D, PRI supports 24 channels, in total. The 23 B channels are information bearing channels; that is to say that each supports the transfer of actual user data. Each of the B channels runs at 64 Kbps. The D channel, which also runs at 64 Kbps, is used for signaling and control purposes. The D channel carries routing and control information for the B channels.

Integrated Services Digital Network, or ISDN, is a set of international standards set by the ITU-I for a circuit switched digital network that supports access to any type of service (e.g. voice, data, or video) over a single, integrated local loop from the customer premises to the network edge. The single loop can support any mix of voice, data, or video, on a channel by channel basis. ISDN has two standard interfaces-BRI and PRI.

BRI (Basic Rate Interface) is the low speed interface, used for lower volume customers. Known as 2B+D, it has two information bearing channels; that is to say that they support end user data and voice transfer.

Based on the definitions provided in Newton's, the PRI can support 23 voice, video, or data channels. Also, the Primary Rate user is connected directly to the LEC central office.

The taxpayer was questioned about the account description "enhanced switched services" and he indicates this service is related to PRI lines that carry customer traffic from LEC to PRI servers located in Doylestown. I have accepted his description of this account as PRI.

*DS-1 Lines*

As discussed under note #1 above, the X O account included both PRI and DS-1 service. The majority of charges included on the monthly billings were related to PRI. They indicate the DS-1 lines included on the XO account were dedicated lines that connect customers to routers for high speed internet access. Newton's Telecom Dictionary, 19th Edition indicates the term DS-1 includes ….Digital Signal, Level 1. It is 1.544 Mbps in North American (T-1).

| Form 886-A (REV JANUARY 1994) | EXPLANATIONS OF ITEMS | | SCHEDULE NO. OR EXHIBIT |
|---|---|---|---|
| NAME OF TAXPAYER Comcation, Inc | | TAX IDENTIFICATION NUMBER 23-2790031 | YEAR/PERIOD ENDED 12/31/98 through 12/31/01 |

Per Netwon's Telecom Dictionary, 19th Edition, the definition of T-1 includes .... Trunk Level 1. A digital transmission link with a total signaling speed of 1.544 Mbps, in both directions (send and receive). You can lease T-1 as a channelized service (delivered as separate voice or data channels), or as an unchannelized raw bit stream. North American carriers typically deliver T-1 channelized, i.e., split into 23 or 24 voice-grade channels, with each running at 56/64 Kbps, depending on the generation of channel bank equipment involved. If you have a need for a bunch of local phones, it is often cheaper to get them delivered on T-1 channels than as individual phone lines. One expensive circuit (i.e., the multi-channel T-1) is far less expensive than 24 less expensive circuits (e.g., 24 single channel voice circuits). While channelized T-1 was developed and optimized for uncompressed voice communications, it can also be used for channelized data communications. A channelized approach is required for access to the traditional PSTN (Public Switched Telephone Network-the local, long distance and international phone system which we use every day), which is channelized throughout the traditional carrier networks.

As with the PRI lines, the DS-1 line user is connected directly to the LECs central office, providing access to a local telephone system.

*ISDN*

The taxpayer indicates the Bell connections were 128 Kbps dual channel ISDN connections to routers. As discussed earlier under PRI, ISDN is a circuit-switched digital network that supports access to any type of service (e.g., voice,data, and video) over a single integrated loop from customer premises to the network edge. Newton's indicates ISDN is a highly sophisticated enhancement of the traditional circuit-switched PSTN (Public Switched Telephone Network). PSTN refers to the local, long distance, and international phone system which we use every day. As long as ISDN is supported by all network elements at all end user locations and throughout the service provider networks, ISDN capabilities are considerable. First, a single local loop connecting to a single service provider can support any mix of voice, data, and video on a channel by channel basis. Second, multiple channels can be linked together in what is known as "bonding" or "rate adaption". For example, 2 64 Kbps B channels could be linked together to form a 128 Kbps chunk of bandwidth. Per the description of the account provided by the taxpayer, it appears rate adaption was involved in ISDN router connections.

As with PRI lines, the ISDN line user is connected directly to the LECs central office, providing access to a local telephone system.

**Tax Law**

IRC 4251 (a)(1) states "there is hereby imposed on amounts paid for communications services a tax equal to the applicable percentage of amounts so paid."

IRC 4251(b) defines the term "communication services" to include local telephone service, toll telephone service, and teletypewriter exchange service.

IRC 4251(b)(2) indicates the applicable percentage referred to under IRC 4251(a)(1) shall mean 3%.

Per IRC 4252(a)(1), local telephone service refers to access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and any facility or service provided in connection with a service described in 4552(a)(1). The term local telephone service does not include any service on which a toll is charged.

| Form 886-A (REV JANUARY 1994) | EXPLANATIONS OF ITEMS | | SCHEDULE NO. OR EXHIBIT |
|---|---|---|---|
| NAME OF TAXPAYER Comcation, Inc | | TAX IDENTIFICATION NUMBER 23-2790031 | YEAR/PERIOD ENDED 12/31/98 through 12/31/01 |

IRC 4252(b) defines toll telephone service as a telephonic quality communication for which (A) there is a toll charge which varies in amount with distance and elapsed time of each individual communication and (B) the charge is paid within the United States, and a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio stations in a specified area which is outside the local telephone system area in which the station provided with the service is located.

Exemptions from the tax described in IRC 4251 are provided in IRC 4253. Per IRC 4253, exemptions from tax are available on the following:

(a) Certain coin-operated service
(b) News services
(c) International, etc organizations
(d) Servicemen in combat zones
(e) Items otherwise taxed
(f) Common carriers and communication companies
(g) Installation charges
(h) Nonprofit hospitals
(i) State and local govt exemption
(j) Exemption for nonprofit educational organizations

Per IRC 4253(k), in order to claim an exemption under (c), (h), (i), or (j) above, a person shall provide to the provider of communication services a statement certifying that such person is entitled to such exemption.

**Discussion**

The taxpayer initially relied on Private Letter Ruling No. 2001133008 when filing this communication tax refund request. PLR 2001133008 discussed a Network builder who established an internet network and also provided access to an ISP for the purpose of providing internet access to ISP customers. The Network builder purchased various communication lines from LECs (local exchange carriers) and used and/or resold such lines to ISPs in the course of its business. PRI (Primary Rate Interface) lines were discussed in this letter ruling. The ruling concluded PRI lines were not subject to tax. As discussed earlier, the letter ruling specifically states "This letter ruling is directed only to the taxpayer who requested it. Section 6110 (k)(3) provides that it shall not be used or cited as precedent."

PLR 201133008 was released on August 17, 2001. It was revoked by Private Letter Ruling No. 200242021. The revocation PLR was issued on July 15, 2002.

Although the ruling has been revoked, the taxpayer indicates the logic behind the refund remains the same. The taxpayer indicates lines included on the claim filed do not fall under the definition of local telephone service, toll telephone service, or teletypewriter exchange service. Therefore, they contend such line charges are outside the scope of tax.

| Form 886-A (REV JANUARY 1994) | EXPLANATIONS OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Comcation, Inc | TAX IDENTIFICATION NUMBER 23-2790031 | YEAR/PERIOD ENDED 12/31/98 through 12/31/01 |

It is the position of the government that all lines included on this claim are subject to tax. As discussed, XO, TCG and AT&T lines included on this claim are described as PRI lines. Although these lines are said to be used to exclusively carry data transmissions between the LEC central office (dial-up access number) and the LEC modem bank or PRI Servers, they are telephonic quality lines which connect the user directly to the local exchange. This provides connection to substantially all persons in the telephone system. As discussed earlier, PRI lines are a type of ISDN service. ISDN supports access to any type of service (voice, data, or video). PRI lines support 23 voice, video, or data channels, with a transmission speed of 1.544 Mbps.

The remaining amounts included on this claim are related to DS-1 lines and dual channel ISDN lines connecting to routers. The DS-1 lines were dedicated lines connecting customers to routers for high speed internet access. The dual channel ISDN lines provide dedicated line connections to routers. As discussed earlier, ISDN and DS-1 lines support voice, data, and video service.

As with the PRI lines, the DS-1 and ISDN line user is connected directly to the local exchange. This provides connection to substantially all persons in the telephone system.

**Conclusion**

The payments included on the claim filed relate to taxable local telephone service, as described in IRC 4251. The fact that the lines are used to provide internet access to customers does not impact the tax status of these lines. The lines provide telephonic quality access to substantially all persons on the local telephone system, if that were the desired usage. Only the capability to provide telephonic quality communication and connectivity to the local telephone system are considered when determining tax status. The taxpayer's actual usage of the line (e.g., to provide internet access) is irrelevant. Also, as discussed earlier, the initially cited PLR has since been revoked and can not be used or cited as precedent. Based on these facts, the amount claimed has been disallowed.

Internal Revenue Service
United States Department of the Treasury

Internal Revenue Bulletin: 2006-25
June 19, 2006

**Notice 2006-50**

***Communications Excise Tax; Toll Telephone Service***

---

Table of Contents


- SECTION 1. PURPOSE
- SECTION 2. BACKGROUND
- SECTION 3. TERMS DEFINED
- SECTION 4. EFFECT OF ABIG, OFFICEMAX, AMTRAK, FORTIS, AND REESE BROS.
- SECTION 5. REQUESTS FOR CREDIT OR REFUND
- SECTION 6. EFFECT ON OTHER DOCUMENTS
- SECTION 7. DRAFTING INFORMATION


## SECTION 1. PURPOSE

(a) *In general.* As further described in this notice, the Internal Revenue Service will follow the holdings of *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) (*ABIG*); *OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005); *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005) (*Amtrak*); *Fortis v. United States*, 2006 U.S. App. LEXIS 10749 (2d Cir. Apr. 27, 2006); and *Reese Bros. v. United States*, 2006 U.S. App. LEXIS 11468 (3d Cir. May 9, 2006). These cases hold that a telephonic communication for which there is a toll charge that varies with elapsed transmission time and not distance (time-only service) is not taxable toll telephone service as defined in § 4252(b)(1) of the Internal Revenue Code. As a result, amounts paid for time-only service are not subject to the tax imposed by § 4251. Accordingly, the government will no longer litigate this issue and Notice 2005-79, 2005-46 I.R.B. 952, which states otherwise, is revoked.

(b) *Credits and refunds.* Taxpayers may be entitled to request credit or refund of the excise taxes paid for the services covered by this notice. This notice provides guidance regarding these requests. In addition, the Commissioner will authorize the scheduling of an overassessment under § 6407 to keep the period of limitations open for these requests. This overassessment will apply to all taxpayers and to all taxes paid for the services covered by this notice beginning with the tax paid on services that were billed to customers after February 28, 2003.

## SECTION 2. BACKGROUND

(a) *In general*—(1) *Tax imposed.* Section 4251(a)(1) imposes a tax on amounts paid for communications services.

(2) *Payment of tax.* Section 4251(a)(2) provides that the tax imposed shall be paid by the person paying for the service (taxpayer). Section 4251(b)(2) provides that the applicable percentage is 3 percent of amounts paid for communications services.

(3) *Collection of tax.* Section 4291 provides that the tax is collected by the person receiving the payment (collector). In most cases, the collector, which is also responsible for paying over the tax to the government, is the telecommunications company that provides the communications services to the taxpayer.

PLAINTIFF'S EXHIBIT C

(b) *Definitions*—(1) *Communications services.* Section 4251(b)(1) provides that the term communications

services means (A) local telephone service; (B) toll telephone service; and (C) teletypewriter exchange service. This notice does not address teletypewriter exchange service.

(2) *Local telephone service.* Section 4252(a) provides that local telephone service means (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system; and (2) any facility or service provided in connection with such a service. Local telephone service does not include any service that is a toll telephone service as defined in § 4252(b) or a private communications service as defined in § 4252(d). This notice does not address private communications service.

(3) *Toll telephone service—(i) Time and distance.* Section 4252(b)(1) provides that toll telephone service includes a telephonic quality communication for which there is a toll charge that varies in amount with the distance and elapsed transmission time of each individual communication and for which the charge is paid within the United States.

(ii) *Periodic charge for a specified area.* Section 4252(b)(2) provides that toll telephone service also includes a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

(c) *Rev. Rul. 79-404.* Rev. Rul. 79-404, 1979-2 C.B. 382, concludes that a long distance telephone call for which the charge varies with elapsed transmission time but not with distance is toll telephone service described in § 4252(b)(1).

(d) *Notice of proposed rulemaking.* In a notice of proposed rulemaking (REG-141097-02, 2003-1 C.B. 807 [68 FR 15690]; April 1, 2003), the Service proposed an amendment to the Facilities and Services Excise Taxes Regulations to provide that toll telephone service described in section 4252(b)(1) may include a communication service for which the charge does not vary with the distance of each individual communication.

(e) *Recent litigation. ABIG*, *OfficeMax*, *Amtrak*, and *Reese Bros.* hold time-only service is not toll telephone service as defined in § 4252(b)(1). Further, *ABIG*, *OfficeMax*, and *Reese Bros.* hold that the communications service provided was not a service described in § 4252(b)(2) because the end result was not a "periodic charge" based on total elapsed time but rather a monthly bill based on a summation of toll charges for individual communications. (In *Amtrak*, toll telephone service described in § 4252(b)(2) would have been exempt from tax under the common carrier exception in § 4253(f).) *ABIG*, *OfficeMax*, *Amtrak*, and *Reese Bros.* also hold that the communications services provided were not local service, notwithstanding the access the services provided to the local telephone system. (*Fortis* affirms, in a *per curiam* opinion, a district court decision reaching the same results.)

(f) *Notice 2005-79.* Notice 2005-79, 2005-46 I.R.B. 952, states that the Service will continue to assess and collect the tax imposed by § 4251 on all taxable communications services, including those similar to the services in *ABIG*.

**SECTION 3. TERMS DEFINED**

The following terms are defined solely for purposes of this notice:

(a) *Bundled service.* Bundled service is local and long distance service provided under a plan that does not separately state the charge for the local telephone service. Bundled service includes, for example, Voice over Internet Protocol service, prepaid telephone cards, and plans that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time for which the service is used. Telecommunications companies provide bundled service for both landline and wireless (cellular) service.

(b) *Local-only service.* Local-only service is local telephone service, as defined in § 4252(a), provided under a plan that does not include long distance telephone service or that separately states the charge for local service on its bill to customers. The term also includes services and facilities provided in connection with service described in the preceding sentence even though these services and facilities may also be used with

long distance service. See, for example, Rev. Rul. 72-537, 1972-2 C.B. 574 (telephone amplifier); Rev. Rul. 73-171, 1973-1 C.B. 445 (automatic call distributing equipment); and Rev. Rul. 73-269, 1973-1 C.B. 444 (special telephone).

(c) *Long distance service.* Long distance service is telephonic quality communication with persons whose telephones are outside the local telephone system of the caller.

(d) *Nontaxable service.* Nontaxable service means bundled service and long distance service.

## SECTION 4. EFFECT OF *ABIG, OFFICEMAX, AMTRAK, FORTIS,* AND *REESE BROS.*

(a) *Tax treatment of communications service after ABIG, OfficeMax, Amtrak, Fortis, and Reese Bros.* The Service will follow *ABIG*, *OfficeMax*, *Amtrak*, *Fortis*, and *Reese Bros.* Accordingly, taxpayers are no longer required to pay tax under § 4251 for nontaxable service. In addition, collectors or taxpayers may request a refund of tax paid under § 4251 on nontaxable service that was billed to the taxpayers during the period after February 28, 2003, and before August 1, 2006 (the relevant period).

(b) *Tax on local-only service.* Collectors should continue to collect and pay over the § 4251 tax on amounts paid for local-only service. As noted in section 3(b) of this notice, local-only service includes amounts paid for facilities or services provided in connection with local telephone service. Thus, for example, tax will continue to be imposed on amounts paid by a taxpayer for renting an amplifier phone provided in connection with local telephone service that is subject to tax.

(c) *Effect on collectors.* Collectors are directed to cease collecting and paying over tax under § 4251 on nontaxable service that is billed after July 31, 2006, and are not required to report to the IRS any refusal by their customers to pay any tax on nontaxable service that is billed after May 25, 2006. Collectors should not pay over to the IRS any tax on nontaxable service that is billed after July 31, 2006. The form will require collectors to certify that for the third quarter of 2006 the § 4251 tax reported on the Form 720 does not include any tax on nontaxable service that was billed after July 31, 2006. Consequently, the IRS will deny all taxpayer requests for refund of tax on nontaxable service that was billed after July 31, 2006. All such requests should be directed to the collector. In addition, collectors may repay to taxpayers the tax on nontaxable service that was billed before August 1, 2006, but are not required to repay such tax. Collectors may also request a refund or make an adjustment to their separate accounts, as appropriate, subject to the provisions of § 6415 and section 5(d)(4) of this notice. Collectors must continue to collect and pay over tax under § 4251 on amounts paid for local only service.

## SECTION 5. REQUESTS FOR CREDIT OR REFUND

(a) *In general*—(1) *Request must follow this notice.* The Commissioner agrees to credit or refund the amounts paid for nontaxable service if the taxpayer requests the credit or refund in the manner prescribed in this notice.

(2) *Form of request.* Taxpayers may request a credit or refund of tax on nontaxable service that was billed after February 28, 2003, and before August 1, 2006, only on their 2006 Federal income tax returns. For this purpose, the 2006 income tax return is the income tax return for calendar year 2006 or for the first taxable year including December 31, 2006. Forms 1040 (series), 1041, 1065, 1120 (series), and 990-T will include a line for requesting the overpayment amount. Persons that are not otherwise required to file a federal income tax return must nevertheless file a return to obtain the credit or refund. Except as provided in section 5(d)(4) of this notice, a request for this credit or refund on any other form (such as a Form 720, 843, or 8849) will not be processed by the Service. Taxpayers will be permitted to request the safe harbor amount under paragraph (c) of this section only if they have paid all taxes billed by their service provider after February 28, 2003, and before August 1, 2006.

(3) *Guidance on the form.* The instructions to the respective federal income tax return forms will provide additional guidance. The forms and instructions will require taxpayers to certify that (1) the taxpayer has not received from the collector a credit or refund of the tax paid on nontaxable service billed during the relevant period and (2) the taxpayer will not ask the collector for a credit or refund of that tax and has withdrawn any such request that was previously submitted. The instructions will also require that taxpayers, except for those individuals using the safe harbor amount, retain records that substantiate the request. These records should include bills from the collector that show the amount of tax charged for nontaxable service for each month during the relevant period and receipts, canceled checks, or other evidence that the amount requested was

actually paid.

(b) *Period of request.* The Commissioner will authorize the scheduling of an overassessment under § 6407 to preserve the period of limitations during which taxpayers may request refunds of the tax on nontaxable service that was billed to customers after February 28, 2003, and before August 1, 2006. Therefore, requests may be made for credits or refunds of tax paid for nontaxable service billed after February 28, 2003, and before August 1, 2006.

(c) *Amount of the request*—(1) *Requests by individual taxpayers*—(i) *Safe harbor amount.* Individual taxpayers may request a safe harbor amount. No documentation will be required to be submitted or kept to support the safe harbor request. However, taxpayers will be permitted to request the safe harbor amount only if they have paid all taxes billed by their service provider after February 28, 2003, and before August 1, 2006; have not received a credit or refund of these taxes from the service provider, and either have not requested such a credit or refund from the service provider or have withdrawn any such request. The amount of this safe harbor is still under consideration and will be announced in later guidance.

(ii) *Actual amount.* Taxpayers that do not request the safe harbor amount may request a credit or refund of the actual amount of tax they paid.

(d) *How to file*—(1) *Requests by individual taxpayers.* Individual taxpayers may request a credit or refund of federal excise taxes paid on nontaxable service only on their 2006 Form 1040, 1040A, or 1040-EZ, *U.S. Individual Income Tax Return.* Individuals who are not otherwise required to file a federal income tax return must nevertheless file Form 1040EZ-T to request the credit or refund. Individual taxpayers, including Schedule C filers, may request either the safe harbor amount or the actual amount of tax paid for nontaxable service.

(2) *Requests by taxpayers other than individual taxpayers.* Taxpayers other than individual taxpayers (entities) may request only the actual amount of tax paid on nontaxable service billed during the relevant period. No safe harbor amount is allowed for entities.

(3) *Requests by entities*—(i) *In general.* Entities may request a credit or refund of federal excise taxes paid on nontaxable service only on their 2006 income tax returns. Any part of the credit or refund attributable to tax payments that were deducted as an ordinary and necessary business expense (including in the determination of unrelated business taxable income) must be included in income for the taxable year in which the refund is received or accrued to the extent that the tax payments reduced the amount of federal income tax (or unrelated business income tax) imposed.

(ii) *Partnerships.* A partnership, as defined in § 7701(a)(2), may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1065, *U.S. Return of Partnership Income.* Any amount of the credit or refund included in partnership income and any interest on the credit or refund must be reported on the partnership's return for the taxable year in which received or accrued and must be allocated to its partners on the Schedule K-1, *Partner's Share of Income, Deductions, Credits, etc.*, for that taxable year.

(iii) *S Corporations.* An S Corporation, as defined in § 1361, may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1120S, *U.S. Income Tax Return for an S Corporation.* Any amount of the credit or refund included in S Corporation income and any interest on the credit or refund must be reported on the S Corporation's return for the taxable year in which received or accrued and must be allocated to its shareholders on the Schedule K-1, *Shareholder's Share of Income, Deductions, Credits, etc.*, for that taxable year.

(iv) *Estates and trusts.* An estate or a trust, as defined in § 301.7701-4(a) of the Procedure and Administration Regulations, may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1041, *U.S. Income Tax Return for Estates and Trusts.* Any amount of the credit or refund included in the estate's or trust's income and any interest on the credit or refund must be reported on the estate's or trust's Form 1041, *U.S. Income Tax Return for Estates and Trusts*, for the taxable year in which received or accrued. However, for a trust that is treated as owned by the grantor or other person under subpart E (§ 671 and following), part I, subchapter J, chapter 1 of the Internal Revenue Code (grantor trust), the owner of the trust may request a credit or refund of federal excise taxes treated as paid by the owner for nontaxable service only on its applicable 2006 federal tax return.

(v) *Tax exempt organizations*. An organization that is described in § 501(a) may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 990-T, *Exempt Organization Business Income Tax Return*. Tax exempt organizations that are not otherwise required to file a federal income tax return must nevertheless file Form 990-T to request the credit or refund. Any amount of the credit or refund included in the organization's unrelated business taxable income must be reported on the organization's Form 990-T, *Exempt Organization Business Income Tax Return*, for the taxable year in which received or accrued. An organization that is subject to tax on its interest income must also report any interest on the credit or refund on its Form 990-T, *Exempt Organization Business Income Tax Return*, for the taxable year in which received or accrued.

(vi) *Corporations*. A corporation, as defined in § 7701(a)(3), that is not described in section 5(d)(3)(iii) of this notice may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1120 (series) income tax return (generally, Form 1120, *U.S. Corporation Income Tax Return*). Any amount of the credit or refund included in the corporation's income and any interest on the credit or refund must be reported on the corporation's income tax return for the taxable year in which received or accrued. Corporations that are not otherwise required to file a federal income tax return must nevertheless file Form 1120 (series) to request the credit or refund.

(vii) *Other nonfiling entities*. Entities that are not otherwise required to file a federal income tax return must file Form 990-T to request the credit or refund.

(4) *Requests and adjustments by collectors*—(i) *Section 6415 conditions to allowance*. The conditions to allowance described in § 6415 apply to all requests and adjustments by collectors, as defined by section 2(a)(3) of this notice. Thus, a request by a collector is allowed only if the person that paid over the tax establishes that it has repaid the amount of the tax to the person from whom the tax was collected, or obtains the written consent of such person to the allowance of the credit or refund.

(ii) *Requests for regular method collectors*—(A) *In general*. A person that collected the tax imposed by § 4251 on nontaxable service and paid it over to the government based on amounts actually collected under § 40.6302(c)-1(a)(2)(i) of the Excise Tax Procedural Regulations (regular method collectors) may request a credit or refund.

(B) *Form of the request*. Regular method collectors may use Form 720X, *Amended Quarterly Federal Excise Tax Return*, line 1, IRS No. 22, for credit or refund of amounts collected and repaid to taxpayers.

(iii) *Account adjustments for alternative method collectors*. A person that collected the tax imposed by § 4251 on nontaxable service and paid it over to the government based on amounts considered as collected under § 40.6302(c)-1(a)(2)(ii) (alternative method collectors) may adjust the separate account for the amount of an overpayment. The required adjustment to the separate account is described in § 40.6302(c)-3(b)(2)(ii)(C). The adjustment is reflected on Form 720, Schedule A, line 2, but may not reduce tax liability on Form 720 below zero.

(e) *Interest on the credit or refund included in income*. If a taxpayer requests a credit or refund of the actual amount of tax paid, interest on the credit or refund of the tax paid for nontaxable service must be included as income on the taxpayer's income tax return for the taxable year in which the interest is received or accrued. Thus, individuals are generally required to report the interest on their 2007 income tax returns.

(f) *Estimated tax effects*. Although the credit or refund allowed to a taxpayer under this notice will be requested on the taxpayer's income tax return, it is not a credit against tax for purposes of §§ 6654 and 6655. Accordingly, the taxpayer may not take the credit or refund into account in determining the amount of the required installments of estimated tax for 2006. In determining the amount of the required installments of estimated tax for 2007, the income attributable to the credit or refund is taken into account on the date the income is paid or credited in the case of a cash method taxpayer and on the date the return making the request is filed in the case of an accrual method taxpayer.

(g) *Requests that do not follow the provisions of this notice*. Requests that do not follow the provisions of this notice (whether filed before or after its publication)—

(1) Will not be processed to the extent they relate to the tax paid on nontaxable service that was billed after February 28, 2003; and

(2) Will be processed normally to the extent they relate to the tax paid on nontaxable service that was billed before March 1, 2003.

**SECTION 6. EFFECT ON OTHER DOCUMENTS**

Notice 2005-79, 2005-46 I.R.B. 952, is revoked. Rev. Rul. 79-404, 1979-2 C.B. 382, will be revoked in a later revenue ruling.

**SECTION 7. DRAFTING INFORMATION**

The principal author of this notice is Taylor Cortright of the Office of the Associate Chief Counsel (Passthroughs and Special Industries). For further information regarding this notice, contact (202) 622-3130 (not a toll-free call).

Prev Up Next
Home

More Internal Revenue Bulletins

**TAX-FREE INTERNET ACT OF 1997 (House of Representatives - March 06, 1997)**

[Page: H786] GPO's PDF

The SPEAKER pro tempore. Under a previous order of the House, the gentleman from Florida [Mr. **Weldon**] is recognized for 5 minutes.

Mr. WELDON of Florida. Mr. Speaker, it is only fitting that I should rise now, the Representative from the home State of the alligator, to address a particular area of our economy that I would like to set aside as not eligible for taxation, and that is the Internet.

Specifically, I have filed a bill today entitled the Tax-Free Internet Act of 1997. This legislation amends the Internal Revenue Code to declare that fees for Internet access and other online services are not and shall not be subject to Federal taxation. Furthermore, the bill would prevent any Federal department from using its funds to study the revenue potential of Internet taxation. I believe that this legislation is a strong statement in support of the free and unfettered development of this industry. My bill has already been endorsed by several online services and Internet service providers.

America Online, one of the Nation's most widely used Internet-related service providers, said, and I quote, `We commend your leadership in authoring and sponsoring the Tax-Free Internet Act of 1997. AOL strongly supports your policy efforts. Any new tax could threaten the continued growth of this global medium.'

The President of Erol's online service adds, `This legislation is a very positive development, and I give it my full support.'

Mr. Speaker, we must not allow this budding industry to be smothered by Federal taxation. A few of the States, including my own State of Florida, have already initiated legislation to exempt the Internet and online service access fees from State and local taxes. We on the Federal level should do likewise.

As the United States Internet Providers Association says of my bill: `We support the efforts of all informed policymakers to protect technology innovation and the growth of the industry through sound legislation. This is a step in the right direction.'

PLAINTIFF'S EXHIBIT D

Mr. Speaker, let us here resolve not to interfere with the technological phenomenon which has done so much to inform and educate so many millions of Americans. Let us restrain the reach of government so as not to smother the vitality and creativity that characterize this new frontier in communications.

| THIS SEARCH | THIS DOCUMENT | THIS CR ISSUE | GO TO |
|---|---|---|---|
| Next Hit | Forward | Next Document | New CR Search |
| Prev Hit | Back | Prev Document | HomePage |
| Hit List | Best Sections | Daily Digest | Help |
| | Contents Display | | |

Internal Revenue Service
United States Department of the Treasury

69 FR 40345

Internal Revenue Bulletin: 2004-29
July 19, 2004

Announcement 2004-61

# *Excise Taxes; Communications Services*

---

Table of Contents


- AGENCY:
- ACTION:
- SUMMARY:
- DATES:
- ADDRESSES:
- FOR FURTHER INFORMATION CONTACT:
- SUPPLEMENTARY INFORMATION:
  - Background
  - Special Analysis


## AGENCY:

Internal Revenue Service (IRS), Treasury.

## ACTION:

Advance notice of proposed rulemaking.

## SUMMARY:

This document requests information from the public on issues that the IRS may address in proposed regulations (REG-137076-02) relating to the tax on amounts paid for communications services. All materials submitted will be available for public inspection and copying.

## DATES:

Written and electronic comments must be received by September 29, 2004.

## ADDRESSES:

Send submissions to: CC:PA:LPD:PR (REG-137076-02), room 5203, Internal Revenue Service, POB 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-137076-02), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, N.W., Washington, DC, or sent electronically, via the IRS Internet site at *www.irs.gov/regs* or via the Federal eRulemaking Portal at *www.regulations.gov* (indicate IRS and REG-137076-02).

## FOR FURTHER INFORMATION CONTACT:

Concerning submissions generally, the Regulations Unit, (202) 622-3628; concerning the proposals, Cy[n]
McGreevy (202) 622-3130 (not toll-free numbers).

PLAINTIFF'S EXHIBIT
E

**SUPPLEMENTARY INFORMATION:**

**Background**

Section 4251 imposes tax on amounts paid for certain communications services, including local and toll telephone service. Section 4252(a) provides that local telephone service means the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system. Section 4252(b)(1) provides that toll telephone service includes a telephonic quality communication for which there is a toll charge that varies in amount with the distance and elapsed transmission time of each individual communication. Section 4252(b)(2) provides that toll telephone service also includes a service that entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

A tax on communications services has existed for over 100 years. The communications services that currently are subject to the tax are defined in section 4252, which was enacted in its current form in 1965. That section describes the local and long distance telephone service sold under the 1965 Federal Communications Commission rules. Existing Treasury regulations do not reflect the 1965 statutory change.

Sections 4252(a) and (b) define local and toll telephone service in terms of telephonic or telephonic quality communication, which means voice quality communication. Since 1965, numerous communications services have been developed and marketed, the methods of transmission have expanded, and the industry has been deregulated.

As a result of these changes, questions have arisen concerning the application of section 4251 to certain communications services that were not available in 1965. In response to these questions, Treasury and the IRS are considering proposing regulations that would revise the existing regulations to reflect changes in technology.

The test for taxability under section 4251 is whether a service for which an amount is paid is a communications service described in section 4252. The purpose of this ANPRM is to solicit information from the public on how present technology should be treated within the description of telephonic or telephonic quality communication in the definitions of local and toll telephone service under section 4252.

To ensure that any new regulations accurately reflect the state of today's communications services industry, Treasury and the IRS request that communications services providers and other interested parties submit comments and suggestions describing the various technologies, services, and methods of transmission currently available for transmitting data and voice communications and how they should be treated under section 4251.

**Special Analysis**

This advance notice of proposed rulemaking is not a significant regulatory action for purposes of Executive Order 12866, "Regulatory Planning and Review."

Mark E. Matthews,
*Deputy Commissioner for*
*Services and Enforcement.*

**Note**

(Filed by the Office of the Federal Register on July 1, 2004, 8:45 a.m., and published in the issue of the Federal Register for July 2, 2004, 69 F.R. 40345)

Prev Up Next
Home

More Internal Revenue Bulletins

# OPTIONS TO IMPROVE TAX COMPLIANCE AND REFORM TAX EXPENDITURES

PREPARED BY THE STAFF

OF THE

JOINT COMMITTEE ON TAXATION

January 27, 2005

JCS-02-05

PLAINTIFF'S EXHIBIT F

## Contents

Page

INTRODUCTION AND SUMMARY ..... 1

GRASSLEY-BAUCUS REQUEST LETTER ..... 3

I. TAX PROCEDURE AND ADMINISTRATION ..... 4

A. Impose Withholding on Certain Payments Made by Government Entities ..... 4
B. Require Partial Payments with Submission of Offers-in-Compromise ..... 10
C. Clarify Standards of Scrutiny for Certain Transactions with Characteristics of Tax Shelters ..... 14

II. INDIVIDUAL INCOME TAX ..... 31

A. Provide Uniform Treatment for Dependent Care Benefits (secs. 21 and 129) ..... 31
B. Combine Hope and Lifetime Learning Credits and the Above-the-Line Deduction for Higher Education Expenses (secs. 25A and 222) ..... 35
C. Repeal Exclusion for Qualified Tuition Reductions (sec. 117(d)) ..... 44
D. Deny Refundable Child Credit When Section 911 Exclusion is Elected (sec. 24) ..... 47
E. Repeal the Deduction for Interest on Home Equity Indebtedness (sec. 163) ..... 52
F. Limit the Exclusion for Rental Value of a Residence Rented for Fewer Than 15 Days (sec. 280A) ..... 57
G. Extend Pro-Rata Basis Allocation Requirement to All Part-Gift, Part-Sale Transactions (sec. 1011) ..... 59
H. Simplify Taxation of Minor Children (sec. 1) ..... 62

III. EMPLOYMENT TAXES ..... 71

A. Provide Consistent FICA Treatment of Salary Reduction Amounts (sec. 3121(a)) ..... 71
B. Conform Calculation of FICA Taxes and SECA Taxes (sec. 1402(a)(12)) ..... 74
C. Extend Medicare Payroll Tax to All State and Local Government Employees (sec. 3121(u)(2)) ..... 80
D. Modify FICA Tax Exception for Students (secs. 3121(b)(10) and 3306(c)(10)) ..... 83
E. Apply Employment Taxes to Sales Incentive Payments Made by Manufacturers (secs. 3121, 3306, and 3401) ..... 91
F. Modify Determination of Amounts Subject to Employment or Self-Employment Tax for Partners and S Corporation Shareholders (sec. 1402) ..... 95

IV. PENSIONS AND EMPLOYEE BENEFITS ..... 105

A. Conform Definition of Qualified Medical Expenses (secs. 105, 106, 213, 220, and 223) ..... 105
B. Limit Deduction for Personal Use of Company Aircraft and Other Entertainment Expenses (sec. 274(e)) ..... 109

Page

C. Limit Deduction for Income Attributable to Property Transferred in Connection with the Performance of Services to Amount Included in Income by the Service Provider (sec. 83) ..... 113
D. Payments in Redemption of Stock Held by an ESOP Not Deductible as Dividends (sec. 404(k)) ..... 117
E. Provide Greater Conformity for Section 403(b) and Section 401(k) Plans (secs. 402(g), 403(b), and 415(c)(3)) ..... 122
F. Extend Early Withdrawal Tax to Eligible Deferred Compensation Plans of State and Local Governments (sec. 72(t)) ..... 130
G. Modify Prohibited Transaction Rules for Individual Retirement Arrangements ("IRAs") to Reduce Tax Shelter Transactions (sec. 4975) ..... 133
H. Repeal Pick-Up Rules for Employee Contributions to State or Local Governmental Retirement Plans (sec. 414(h)) ..... 140

V. CORPORATE AND PARTNERSHIP PROVISIONS ..... 145

A. Modify Extraordinary Dividend Rules for Common Stock (sec. 1059) ..... 145
B. Reduce Tax-Indifferent Shareholder's Basis in Stock by Nontaxed Portion of Extraordinary Dividend (sec. 1059) ..... 148
C. Modify Active Business and Control Requirements for Section 355 Corporate Divisions (sec. 355) ..... 153
D. Modify Application of Unrelated Business Income Tax to S Corporation Shareholders (sec. 512) ..... 159
E. Modify Safe Harbor for Allocation of Nonrecourse Deductions and Exclude Nonrecourse Liabilities From Outside Basis (secs. 704 and 752) ..... 161
F. Modify Adjustment Rules for Basis of Undistributed Partnership Property (sec. 734) ..... 168
G. Treat Guaranteed Payments to Partners as Payments to Nonpartners (sec. 707) ..... 170

VI. INTERNATIONAL PROVISIONS ..... 174

A. Amend the Employer-Provided Housing Exclusion and Impose a Stacking Rule with Respect to Non-Excludable Income (sec. 911) ..... 174
B. Amend Rules for Determining Corporate Residency (sec. 7701) ..... 178
C. Modify Entity Classification Rules to Reduce Opportunities for Tax Avoidance (sec. 7701) ..... 182
D. Adopt a Dividend Exemption System for Foreign Business Income ..... 186

VII. OTHER BUSINESS PROVISIONS ..... 198

A. Disallow Deduction for Interest on Indebtedness Allocable to Tax-Exempt Obligations (sec. 265) ..... 198
B. Modify Recapture of Section 197 Amortization (sec. 1245) ..... 204
C. Modify Application of Income Forecast Method of Depreciation (sec. 167) ..... 207
D. Apply Luxury Automobile Limitations to Sport Utility Vehicles (sec. 280F) ..... 210
E. Disallow Deduction for Interest on Debt Allocable to Tax-Exempt Income of Insurance Companies (secs. 265 and 832) ..... 214

Page

F. Eliminate Double Deduction of Mining Exploration and Development Costs Under the Minimum Tax (sec. 57) .......... 218

VIII. EXEMPT ORGANIZATIONS .......... 220

A. Require Five-Year Review of Exempt Status of Public Charities and Private Foundations and Annual Notice by Organizations Not Required to File Information Returns (sec. 508) .......... 220
B. Impose Termination Tax on Conversions of Assets of Charities (secs. 501, 507, 4941, and 4958) .......... 230
C. Tax Involvement by Exempt Organizations in Tax-Shelter Transactions (secs. 6011 and 6707A) .......... 247
D. Reform Intermediate Sanctions and Extend Certain Reforms to Private Foundations (secs. 4941 and 4958) .......... 254
E. Increase the Amount of Excise Taxes Imposed on Public Charities, Social Welfare Organizations, and Private Foundations (secs. 4941, 4942, 4943, 4944, 4945, and 4958) .......... 270
F. Modify Charitable Deduction for Contributions of Conservation and Facade Easements (sec. 170) .......... 277
G. Limit Charitable Deduction for Contributions of Clothing and Household Items (sec. 170) .......... 288
H. Reform Rules for Charitable Contributions of Property (sec. 170) .......... 293
I. Require Public Disclosure of Form 990-T and Related Certification Requirements (secs. 6104 and 6685) .......... 308
J. Expand the Base of the Tax on Private Foundation Net Investment Income (sec. 4940) .......... 313
K. Limit Tax-Exempt Status of Fraternal Beneficiary Societies that Provide Commercial-Type Insurance (sec. 501(c)(8)) .......... 319
L. Establish Additional Exemption Standards for Credit Counseling Organizations (secs. 501(c)(3) and 501(c)(4)) .......... 327

IX. TAX-EXEMPT BOND PROVISIONS .......... 338

A. Impose Loan and Redemption Requirements on Pooled Financing Bonds (sec. 149) .......... 338
B. Amend Information Reporting Requirements to Include Interest on Tax-Exempt Bonds (sec. 6049) .......... 346
C. Clarify Limitations on Indian Tribes' Use of Tax-Exempt Bond Proceeds (sec. 7871) .......... 350
D. Eliminate Private Payment Test for Stadium Bonds (sec. 141) .......... 353
E. Require Allocation of Volume Cap to Mortgage Credit Certificates Based on Allocation of Volume Cap to Mortgage Bonds (secs. 25 and 143) .......... 359
F. Eliminate Advance Refunding of Governmental Bonds and 501(c)(3) Bonds (sec. 149(d)) .......... 365

X. EXCISE TAXES .......... 368

A. Modify the Federal Excise Tax on Communications Services (secs. 4251-4254) .......... 368

Page

B. Equalize Alcohol Excise Taxes (secs. 5001, 5041, and 5051) ........................................ 379
C. Subject International Flights with Wholly Domestic Segments to the Segments Tax (secs. 4261 and 4262) ........................................ 385
D. Modify the Federal Excise Tax on Sport Fishing Equipment (secs. 4161 and 4162) .... 388

XI. ESTATE AND GIFT TAXATION ........................................ 392

A. Limit Perpetual Dynasty Trusts (secs. 2631 and 2632) ........................................ 392
B. Determine Certain Valuation Discounts More Accurately for Federal Estate and Gift Tax Purposes (secs. 2031, 2512, and 2624) ........................................ 396
C. Curtail the Use of Lapsing Trust Powers to Inflate the Gift Tax Annual Exclusion Amount (sec. 2503) ........................................ 405
D. Provide Reporting for a Consistent Basis Between the Estate Tax Valuation and the Basis in the Hands of the Heir (sec. 1014) ........................................ 409
E. Modify Transfer Tax Provisions Applicable to Section 529 Qualified Tuition Accounts (sec. 529) ........................................ 412

XII. ESTIMATED REVENUE EFFECTS OF PROPOSALS ........................................ 425

# X. EXCISE TAXES

## A. Modify the Federal Excise Tax on Communications Services (secs. 4251-4254)

### Present Law

**In general**

A three-percent Federal excise tax is imposed on amounts paid for communications services (sec. 4251). Communications services are defined as "local telephone service," "toll telephone service," and "teletypewriter exchange service."[819] The person paying for the service (i.e., the consumer) is liable for payment of the tax. Service providers are required to collect the tax; however, if a consumer refuses to pay, the service provider is not liable for the tax and is not subject to penalty for failure to collect if reasonable efforts to collect have been made. Instead, the service provider must report the delinquent consumer's name and address to the IRS, which then must attempt to collect the tax.[820]

Local telephone service is defined as the provision of voice-quality telephone access to a local telephone system that provides access to substantially all persons having telephone stations constituting a part of the local system.[821]

Toll telephone service is defined as voice quality communication for which (1) there is a toll charge that varies with the distance and elapsed transmission time of each individual call and payment for which occurs in the United States, or (2) a service (such as a wide area telephone service, or "WATS") which, for a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), entitles the subscriber to an unlimited number of telephone calls to or from an area outside the subscriber's local system area.

Special rules, enacted in 1997, apply to the sale of "prepaid telephone cards." These cards are subject to tax when a telecommunications carrier sells them to a non-

---

[819] "Teletypewriter exchange service" refers to a data system that provides access from a teletypewriter or other data station to a teletypewriter exchange system and the privilege of intercommunication by that station with substantially all persons having teletypewriter or other data stations in the same exchange system. While it is understood that the system to which the definition was initially intended to apply is no longer in use, the definition may fit other services provided now or that may be provided in the future.

[820] In general, the amount of tax is based on the sum of charges for taxable services included in the bill. If the person who renders the bill groups individual items for purposes of rendering the bill and computing the tax, then the tax base with respect to each such group is the sum of all items within that group. The tax on any remaining items not included in any such group is based on the charge for each item separately.

[821] The access to substantially all persons having telephone stations constituting a part of the local system is sometimes referred to as access to the public switched telephone network.

telecommunications carrier (rather than when communication services are provided to the consumer). The base to which the tax is applied is the face amount of the card.

**Exemptions**

Present law provides for the following exemptions:

- Public coin-operated service from the tax on local telephone service, and to the extent that the charge is less than 25 cents, from the toll telephone service tax.[822]
- Service for the collection of news by the public press, news ticker, or radio broadcasting services (providing a news service as part of or similar to that of the public press), from the toll telephone service tax. (Local telephone service provided to the press is subject to tax.)
- Private communication service for which a separate charge is made, from the local telephone service tax.[823]
- Service provided to international organizations and the American National Red Cross.
- Toll telephone service provided to members of the Armed Services who are stationed in combat zones.
- Certain toll telephone service to common carriers (i.e., public transportation companies), telephone or telegraph companies, or radio broadcasting stations or networks in the conduct of these businesses.
- Installation charges (including wires, poles, switchboards, or other equipment).
- Telephone service provided to non-profit hospitals.
- Telephone service provided to State and local governments.

---

822 If coin-operated toll service is taxable, the tax is computed to the nearest multiple of five cents.

823 Private communication service is defined as: (1) service that entitles the customer to exclusive or priority use of a communication channel or group of channels, or an intercommunication system for the customer's stations; (2) switching capacity, extension lines and stations, or other associated services provided in connection with services described in (1); and (3) channel mileage connecting a telephone outside a local service area with a central office in the local area.

Unlike the other exemptions, the special treatment for private communication service is accomplished by means of an exclusion from the definition of local telephone service rather than as a stated exemption.

- Telephone service provided to nonprofit educational organizations.
- Telephone service provided to the government of the United States.

**Private communications services exclusion**

The exclusion for private communications services was added by the Excise Tax Reduction Act of 1965 in order to equalize the tax treatment of internal local communications systems, such as a private branch exchange system, purchased by businesses, and similar services leased to businesses by telephone companies. Prior to 1965, leased systems were subject to tax if they could access a local telephone exchange, whereas purchased systems were not taxed. Equalization of treatment was achieved by exempting leased systems from tax. Equipment purchased by businesses for long distance internal communications is free of tax, just as local systems are.

**Toll telephone service controversy**

As stated above, toll telephone service is defined as voice quality communication for which (1) there is a toll charge that varies with the distance and elapsed transmission time of each individual call and payment for which occurs in the United States, or (2) a service (such as a wide area telephone service, or "WATS") which, for a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), entitles the subscriber to an unlimited number of telephone calls to or from an area outside the subscriber's local system area.

In a series of recent cases, the IRS has had only limited success in sustaining the tax on toll telephone services where the charges for such services are assessed on an individual call basis and do not vary in amount with both elapsed transmission time and distance.[824] The conjunctive (time and distance) requirement of present law is not literally met by charges for toll telephone services that vary solely by elapsed transmission time. On August 9, 2004, the IRS issued Notice 2004-57 confirming that it "will continue to assess and collect the tax under section 4251 on all taxable communications services, including those communications services similar to those at issue in the cases."[825]

---

[824] Compare *Reese Brothers, Inc. v. United States*, No. 03-745 (W.D. Pa. Nov. 30, 2004); *National Railroad Passenger Corp. v. United States*, 2004 U.S. Dist. LEXIS 18907 (D.D.C. Sept. 20, 2004); *Fortis, Inc. v. United States*, 2004 U.S. Dist. LEXIS 18686 (S.D.N.Y. Sept. 16, 2004); and *Office Max, Inc. v. United States*, 309 F. Supp. 984 (N.D. Ohio 2004), *appeal docketed*, No. 04-4009 (6th Cir. Aug. 19, 2004) *with American Bankers Insurance Group v. United States*, 308 F. Supp. 1360 (S.D. Fla. 2004) (reading "and" disjunctively as "or" in the definition of toll telephone service), *appeal docketed*, No. 04-10720-EE (11th Cir. February 12, 2004); and Rev. Rul. 79-404, 1979-2 C.B. 382 (finding that a service qualifies as toll telephone service even though the charge for calls between remote maritime stations and stations in the United States vary with elapsed transmission time only).

[825] Notice 2004-57, 2004-35 I.R.B. 376. The Notice also stated that persons (taxpayers) paying for taxable communications services are required to pay the tax to a collecting agent (i.e.,

**Overview of history of the Federal communications excise tax**

The first Federal excise tax on telephone service was enacted in 1898 to help finance the Spanish-American War. That tax was repealed in 1902 and was not re-enacted until World War I required additional revenues. The World War I telephone tax was repealed in 1924 and was re-enacted in 1932. All of these initial telephone taxes applied only to toll (long distance) service. In 1941, prior to the advent of World War II, the tax was extended to general local service.

A Federal excise tax on telephone service has been in effect in every year since 1941, despite enactment of periodic legislation to repeal or phase out the tax. In the Excise Tax Reduction Act of 1965, Congress scheduled a phase-out, beginning with a reduction in the then 10-percent rate[826] for both local and toll service to three percent after 1965. Additional reductions of one percentage point per year were scheduled thereafter until there would have been no tax effective on January 1, 1969. However, the scheduled reductions were repealed in 1966 (effective April 1, 1966), and the 10-percent rate was re-instated. A delayed phase-out schedule was enacted in 1968, to begin in 1970. This phase-out schedule also was postponed, with a one-percentage point per year phase-out finally going into effect on January 1, 1973.

In 1973, the tax rate declined from 10 percent to nine percent as the first step in this phase-out, which was to be completed beginning in 1982. However, the Omnibus Reconciliation Act of 1980 delayed the repeal by one year (until 1983); and the Economic Recovery Tax Act of 1981 further delayed repeal for two additional years. After reaching a rate of one percent, the rate was increased again to three percent in 1983, and after being extended at that rate several times, the three-percent rate was made permanent by the Revenue Reconciliation Act of 1990.

**Reasons for Change**

The present communications excise tax provisions were enacted before the development of most modern technology -- the growth of computers and new electronic means of communication. The proliferation of wireless communications technology and the Internet, and in particular broadband access, has blurred the lines between "data" and "voice" and between the functions of transmission and application.[827] Consequently, service providers have found it

---

the service provider). Taxpayers were directed to preserve any claims for overpayment by filing administrative refund claims with the IRS. In addition, the Treasury Department recently issued final, temporary, and proposed regulations relating to the obligations of persons that receive payments for communications services (or air transportation) subject to excise tax when persons liable for tax refuse to pay. T.D. 9149, 2004-38 I.R.B. 494; REG-163909-02, 2004-38 I.R.B. 499.

[826] At their highest, the tax rates were 15 percent on general local service and 25 percent on toll service costing more than 24 cents per message. These rates were in effect from 1944 until 1954.

[827] The complications resulting from these developments became evident during the recent legislative debates relating to the regulation and State and local taxation of Voice Over Internet Protocol (VOIP) services. See, e.g., VOIP Regulatory Freedom Act of 2004, S. 2281,

increasingly difficult to determine which services are taxable communications services and which are nontaxable information services.[828]

The basis for the toll (long distance) telephone tax has not kept up in many instances with the many ways that long distance services are charged today. For example, long distance calling plans may be purchased now by paying a fixed monthly fee for a limited (or even an unlimited) number of minutes usable nationwide. In addition, both local and long distance telephone services may be bundled together or with nontaxable services, including data (e.g., text messaging, or wireless internet).

The exclusion for private communication services has also been overtaken by new technologies and marketing practices. It is possible for larger businesses to purchase telephone equipment (including private lines or microwave relays in some cases) and thereby significantly reduce their communications costs by reducing their tax liability relative to the tax paid for similar services by smaller businesses and individuals who must contract with third parties for identical services. In addition, private communications systems or services partially or wholly excluded from the telephone tax can be used to facilitate long distance services.[829]

## Description of Proposal

### In general

The proposal is presented below as three options. Option 3 represents a more fundamental change to the tax than Option 2, which in turn represents a more fundamental

---

108th Cong., 2d Sess. (2004) (introduced April 5, 2004 with restriction on State and local taxation of VOIP applications; reported out of Committee on Commerce, Science, Transportation on November 19, 2004 without such restriction); Internet Tax Nondiscrimination Act, Pub. L. No. 108-435, amending Internet Tax Freedom Act, sec. 1108 (generally permitting taxation of voice services utilizing Internet protocol), codified as amended at 47 U.S.C. sec. 151 note (2004).

VOIP is the use of software, hardware, or network equipment for real-time two-way or multidirectional voice communications over the public Internet or a private network utilizing Internet protocol, or any successor protocol, in whole or in part, to connect users notwithstanding (i) the underlying transmission technology used to transmit the communications; (ii) whether the packetizing and depacketizing of the communications occurs at the customer premise or network level; or (iii) the software, hardware, or network equipment used to connect users. See VOIP Regulatory Freedom Act of 2004, H.R. 4129, 108th Cong., 2d Sess., sec. 10(a)(6) (2004).

[828] For example, AT&T has claimed that adding an advertisement heard by users when they dial the main number to make a call using prepaid calling cards transforms the cards from a communications service subject to certain regulatory fees to an exempt information service. See *Wall Street Journal*, January 7, 2005, at A3.

[829] See, e.g., Rev. Rul. 79-405, 1979-2 C.B. 383.

change than Option 1. Each of the options assumes that the current three-percent rate is applied to the relevant tax base.

**Option 1: Modify the definitions of toll and local telephone services**

Under this option, the communications excise tax is imposed upon both local and non-local (long distance) voice telephone services, regardless of whether the charges are fixed or vary with distance, elapsed transmission time, both, or some other criteria. Definitions are clarified to remove any distinction between the calculation of taxes on local and long distance telephone services, and to clarify that the tax is intended to apply to landline and wireless (including satellite) voice communications services.

Option 1 contemplates no additional changes to the communications excise tax provisions. No view is expressed regarding whether VOIP is a taxable communications service or a nontaxable information service.

**Option 2: Modernize the excise tax on voice communications services**

Option 2 incorporates the changes to the tax under Option 1 and makes further changes to the law. Under Option 2, a voice communications service is taxable regardless of its technical form. For example, the tax applies to voice communications services using landlines, analog and digital wireless, satellite and VOIP, or any combination. It is not necessary that the voice communications service provide the capability to access the public switched telephone network (required under present law) to be taxable.

In general, a service component is classified as a taxable communications service if the primary purpose of the service component is the transmission of real-time voice communications. The content of the communications or the capability for generating, acquiring storing, transforming, processing, retrieving, utilizing, or making information available via communications, is not a taxable communications service.[830] For example, a service in which a caller dials a "1-900" number for the purpose of receiving information is a nontaxable information service. However, the underlying telephone service provided to the information services provider by the communications provider is a taxable communications service.[831]

---

[830] This distinction is generally consistent with 47 U.S.C. 153 (20), which defines an information service as "the offering of a capability for generating, acquiring storing, transforming, processing, retrieving, utilizing, or making information available via telecommunications." However, Options 2 and 3 do not expressly adopt the operative distinctions between telecommunications services and information services that may currently exist in the regulatory world. In addition, Options 2 and 3 of this proposal implicitly recognize that real-time voice communications may be transformed into data form to facilitate some or all of its physical transmission, and then reconstituted as voice. Such intermediate transformation should not affect the incidence of excise taxation, which is a tax upon the service received.

[831] This treatment is consistent with present law. See Rev. Rul. 89-84, 1989-1 C.B. 296. The telephone service that generally enables the caller generally to place the "1-900" call (as well as other calls) is also a taxable communications service.

To avoid controversy, certain service components are expressly classified as taxable communications services: enhanced voice service features, such as conference calling, three-way calling, call forwarding, caller ID and voice mail services, as well as other ancillary services taxable under present law.[832] Directory listings (whether "white pages" or "yellow pages"), however, are classified as information services.[833] Provision of a "regular" phone line or circuit that may be used for facsimile, for teletypewriter, or for connection to a "dial-up" Internet access provider is treated as a taxable communications service unless the line or circuit cannot be used for real-time voice communications. Provision of broadband (where the amount for such service is separately itemized from VOIP) or dial-up Internet access service (where not connected to the public switched telephone network) is not taxable.

The billing and bundling rules generally remain as under present law. However, to be excluded or exempted from the communications excise tax, a nontaxable service component must be separately stated on the customer's bill. The Treasury Department is granted the regulatory authority to determine if the communications component of a service is de minimis, if an offered service constitutes a service component, and if a service component is a communications service or an information service.[834]

Option 2 modifies certain present-law exemptions. Present-law exemptions for the press, common carriers (e.g., trucking companies), and radio broadcasting stations and networks are expanded to cover all communications excise taxes (rather than only taxes on toll telephone services).[835] Separately itemized service components provided by one communications provider to another communications provider are exempt from excise tax to the extent that the recipient uses such services to provide services to its customers. The exemption for public coin-operated service is modified such that such calls are exempted to the extent of the minimum amount charged by the coin-phone service for a local call. The rest of the exemptions (except for private communications services) are unchanged.

---

[832] Voice mail services are generally classified as private communications services under present law. See Priv. Ltr. Rul. 9006014 (November 7, 1989). Such classification would not change under the proposal, to the extent such services are provided within the scope of the private communications services exemption, as modified under the proposal.

[833] White pages directory listings are classified as taxable local telephone services under present law. Yellow pages listings, however, are classified as nontaxable advertising. See Rev. Rul. 72-616, 1972-2 C.B. 575.

[834] For example, in the case of a private voice network bundled with a video game, the Treasury Department might determine that the access to the bundled private voice network is de minimis because access to a similar, but unbundled, private voice network is available at no charge.

[835] If Option 2 or 3 is enacted, it may be timely to revisit whether these and other exemptions are still warranted.

The private communication services exclusion is significantly modified. Under Option 2, the exclusion continues to apply as under present law, but is geographically limited to taxable communications either (a) within a Core Based Statistical Area,[836] or (b) within one building or between buildings located on a contiguous plot of land. Rules similar to the rules of the Mobile Communications Sourcing Act[837] are applicable to cross-border services.

**Option 3: Expand the tax base to all voice and data communications**

Option 3 incorporates the changes to the tax under Option 2 (including changes to the tax under Option 1) and makes further changes to the law. Under Option 3, the communications excise tax base is generally expanded to include all data communications services to end-users. The taxable base includes local and long distance voice services, VOIP, analog and digital cellular and satellite telephone services, cable and satellite television services (to the extent the charge is for communications), broadband and dial-up Internet access services, paging services, and other data communications services.

In general, a service component is classified as a communications service if the primary purpose of the service component is the transmission of communications, as contrasted with the content of the communications or the capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making information available via communications. The billing and bundling rules are similar to those of Option 2. For example, cable and satellite television is considered to consist of a taxable communications service component bundled with a nontaxable information (content) component.[838]

Unlike Option 2, communications capacity ("bandwidth") is taxable, whether provided, for example, as a service, as a lease, or as the sale of "lit" (activated) fiber optic cable or installed "dark" (inactivated) fiber.

---

[836] A Core Based Statistical Area is a geographical area containing a recognized population nucleus and adjacent communities that have a high degree of integration with that nucleus. See Office of Management and Budget, *Standards for Defining Metropolitan and Micropolitan Statistical Areas*, 65 Fed. Reg. 82,228 (2000). Lists of these areas are published periodically by the Office of Management and Budget, based on information from the Census Bureau.

[837] Pub. L. No. 106-252 (2000) (codified at 4 U.S.C. secs. 116-126). This legislation generally relates to the methodology for allocating and apportioning mobile communications revenue for purposes of State and local taxation.

[838] The communications component of cable and satellite television consists of the portion of the "basic" service provided by the taxpayer attributable to the communications, i.e., the capability to access the provider's content. Enhanced features, such as pay-per-view and "premium" channels, are not taxable services, but are, instead, incremental information services.

## Effective Date

Option 1 of the proposal is effective for services rendered after the date of enactment. Option 2 or 3 of the proposal is effective for services rendered on or after the first day of the first calendar quarter beginning 60 days after the date of enactment.

No inference is intended as to the treatment of any issues or controversies arising under present law.

## Discussion

### Overview

There is no compelling policy argument for imposing taxes on communications services. Indeed, in 1987 the Department of the Treasury recommended letting the tax expire.[839] Any excise tax distorts consumer decisions, and taxing new services and new technologies makes them more expensive, and, therefore, may slow their development.[840] The last significant revision of the tax occurred in 1965. Consequently, many of the rules are now so obsolete due to intervening developments in technology and marketing that, in many cases, they either fail to capture many services that traditionally were seen as within the scope of the communications tax or they capture those services unevenly.[841]

On the other hand, the excise tax on communications services raises a significant amount of revenue. According to the IRS, the communications excise tax raised approximately $5.8 billion in 2003.[842] Assuming that the communications excise tax continues in force, however,

---

[839] Office of Tax Analysis, U.S. Department of the Treasury, *Report to the Congress on Communication Services Not Subject to Federal Excise Tax* (1987). The specific mandate for the Report in section 8061 of Public Law 99-509, The Omnibus Budget Reconciliation Act of 1986, was to study the various exemptions of the communications excise tax, and to describe a method under which the tax could be extended to private communications services.

[840] Indeed, some have argued that the costs imposed on society by taxing telecommunications are quite large in terms of the distortion of choice. See, e.g., Jerry Hausman, "Taxation by Telecommunications Regulation," National Bureau of Economic Research, Working Paper No. 6260 (1997).

[841] The Joint Committee staff recommended repealing the tax in its 2001 Simplification Study. See Joint Committee on Taxation, *Study of the Overall State of the Federal Tax System and Recommendations for Simplification, Pursuant to Section 8022(3)(B) of the Internal Revenue Code of 1986*, (JCS-3-01), Vol. II at 504-506, April 2001. The primary reason for the recommendation was the obsolescence of the law due to technological changes. If the tax was not eliminated, the Study recommended updating the Code to reflect current technology and granting broad regulatory authority to the Treasury Department to allow it to continually update the tax base to reflect future technological changes.

[842] This was the total excise tax collected by, or reported to, the IRS in fiscal year 2003. See IRS, *Statistics of Income Bulletin* (Fall 2004), Vol. 24, No. 2, Table 21 at 345.

the policies of fairness and efficiency require that the tax apply as consistently as possible to similar services with as little administrative costs as possible.[843]

**Option 1**

This option involves making only limited changes to certain tax rules and is targeted to resolve a particular set of controversies that currently place the administration and collection of the communications tax on toll telephone service in substantial doubt. Option 1 will end the controversy regarding the dual requirements of elapsed transmission time and distance, and should eliminate other uncertainties regarding the application of the present-law definition of toll telephone services by more closely conforming such definition to the range of current industry billing practices. Option 1 does not address other current major issues, for example, issues relating to access to the local telephone system, private communications services, and the full or mixed use of new technologies such as VOIP. However, it might be possible to selectively address these or other discrete issues within the scope of an expanded Option 1, by adding selected features from Option 2.

Many of the arguments advanced by those who believe the tax should be repealed are also arguments against Option 1. Future controversies will almost certainly develop as technologies are developed and implemented and the market changes. Since these changes are occurring now, Option 1 is likely to be only a short-run measure.

**Option 2**

This option is based on the premise that the current communications tax on voice services can be adapted to the technology and the markets of the early 21st century. Option 2 attempts to resolve current controversies such as the time/distance controversy and the coverage of services provided through multiple technologies, including VOIP. In addition, the option recognizes that the broad exclusion for private communications services, the requirement of access to the local telephone system, and the application of certain exemptions solely to toll (long distance) services no longer operate efficiently and equitably in light of technical developments and the practical difficulties in distinguishing between local and long distance services.

At the same time, Option 2 does not tax data, Internet access, and bandwidth, and therefore does not "tax the Internet." In addition to the voice/data dichotomy, distinctions are drawn between communications services and information services. While such distinctions may generally parallel regulatory distinctions, they may not follow them in a particular case.

---

[843] In recognition of the many changes in the communications services industry, on July 19, 2004, IRS and Treasury issued an Advanced Notice of Proposed Rulemaking, in which comments and suggestions were requested describing the various technologies, services and methods of transmission currently available for transmitting data and voice communications and how they should be treated under the communications excise tax rules. See Announcement 2004-61, 2004-29 I.R.B. 67. There is significant doubt, however, whether the IRS and Treasury have the statutory authority to resolve many of the issues currently arising under those rules.

Similarly, cross-border rules are adapted from the Federal law specifying the apportionment methodology for mobile communications for State and local consumption tax purposes.

Option 2 also recognizes that service providers may bundle their customer offerings in a variety of ways. Such bundling may be functional in nature, such as voice accompanied by and integrated with data, or the bundling may be in the nature of marketing or discounts (e.g., a nontaxable data service "thrown in for free" when taxable voice service is purchased). The Treasury Department is given the authority to make the necessary determinations regarding these very fact-specific issues.

Option 2 may not be a complete solution to the problems inherent in present law. It does not address technological changes and practices that may make certain nontaxable data services a close substitute for taxable voice services. It therefore tends to favor such data services over voice services, and therefore may inhibit the growth of taxable voice services relative to nontaxable data services. While this distinction also exists under present law, its impact may grow significantly in the future.

**Option 3**

This option is based on the premise that taxation of voice services and not data and internet services creates an economic distortion. Voice and data are becoming interchangeable and integrated parts of modern communications. For example, cellular phones send and receive text messages and may access the Internet as well as transmit and receive voice communications. Cellular phones are being manufactured that may operate using VOIP through "Wi-Fi"[844] access, as well as through more traditional means. As voice phone service migrates to using Internet protocol, there may be no way to distinguish "packets" of voice and "packets" of data. It is also expected that users will integrate their Internet data and voice applications. Consequently, both data and voice are taxable services under this option.

Extending the tax to all communications requires taxing Internet access, bandwidth capacity, and the transmission of cable and satellite television, as these are close substitute means for delivery of information and other content. This will make the distinction between communications services (including data) and information services increasingly important. While it may be relatively simple at this time for a cable company to apportion its revenue between the transport of information and the information itself, it may become more difficult as technology develops. In addition, the resale exemption is intended to prevent double taxation of the communications component of services.

While Option 3 will still leave distortions in the market between communications services and other goods and services, Option 3, unlike Option 2, should minimize or eliminate distortion in the markets for different communications services.

[844] "Wi-Fi" is a wireless local area network product through which one may access the Internet, based on IEEE 802.11 specification.